**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 91-2026

HERMAN ROBERT CHARLES CLARK, JR.,

Petitioner-Appellee
Cross-Appellant,

versus

JAMES A. COLLINS, DIRECTOR, TEXAS
DEPT. OF CRIMINAL JUSTICE, INSTI-
TUTIONAL DIVISION,

Respondent-Appellant
Cross-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

(April 14, 1994)

Before POLITZ, Chief Judge, JOLLY and HIGGINBOTHAM, Circuit Judges.

POLITZ, Chief Judge:

The State of Texas appeals a grant of habeas corpus relief to Herman Robert Charles Clark, Jr., vacating the death sentence imposed on him due to a violation of **Penry v. Lynaugh**.[1] Clark cross-appeals, challenging the denial of postconviction relief on 14 other grounds. We affirm in part, reverse in part, and remand with instructions to deny the writ.

---

[1] 492 U.S. 302 (1989).

Background

At approximately 3:00 a.m. on April 4, 1981, Clark, armed with a gun, forcibly entered the Houston apartment of Joseph Edward McClain. McClain and his girlfriend were asleep in one bedroom while the girlfriend's son slept in another. After a brief reconnaissance of the dwelling Clark awakened the three occupants and robbed them at gunpoint. Confining McClain and the child in a bathroom, he brought the woman into the child's bedroom and prepared to rape her. Clark inadvertently left the gun within her reach as he searched the kitchen for matches to light a marihuana cigarette. She grabbed the gun and cried out for help. Clark rushed back to the son's bedroom as McClain emerged from the bathroom. In the ensuing struggle Clark shot McClain and the woman. McClain died. After police apprehended Clark, and against the advice of his attorneys, he made a full confession, admitting a preconceived plan to burglarize the McClain apartment and rape any female he might encounter there. He disclaimed any intent to kill, asserting that he intended only to wound McClain to facilitate escape.

Clark pleaded not guilty to a grand jury indictment charging capital murder in the course of committing and attempting to commit robbery, burglary, and aggravated rape. A jury found him guilty. During the penalty phase the state introduced evidence that Clark, both before and after killing McClain, had committed three other burglaries involving rape and sodomy of female victims. Taking the stand against his attorneys' advice, Clark admitted to those

2

offenses as well as "60 to 70 incidents, probably upward to 100" others, but attributed all to mental illness, including post-traumatic stress disorder resulting from prior incarceration. Clark further testified that, during childhood, he suffered sexual assaults at his father's hands and had to "hit the streets" to support his family after his parents' divorce. The jury answered affirmatively the special issues then set forth in Tex. Code Crim. Proc. art. 37-071(b),[2] requiring the trial court to impose a sentence of death by lethal injection.[3]

On direct appeal Clark claimed that the Texas capital sentencing scheme unconstitutionally failed to require jury consideration of all mitigating evidence -- an argument now recognized as a **Penry** claim -- and asserted 11 other points of error.[4] The Texas Court of Criminal Appeals affirmed the

---

[2]That statute, as applied to Clark, required the jury to determine the following special issues:

> 1. Whether the conduct of the defendant that cause the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
>
> 2. Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
>
> 3. Whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Texas has since modified its capital sentencing scheme.

[3]Tex. Code Crim. Proc. art. 37.071(e) (codified as amended at Tex. Code Crim. Proc. art. 37-071(g)).

[4]Although Clark failed to raise the **Penry** point at trial, the Court of Criminal Appeals reached its merits on direct appeal.

conviction and sentence.[5]  The Supreme Court denied his petition for certiorari.[6]

After rejection of an initial state habeas corpus petition, Clark filed simultaneous state and federal applications for postconviction relief.  Both petitions alleged ineffective assistance of counsel in five respects;[7] presentation at the penalty phase of unfairly inflammatory testimony and closing argument regarding other crimes he committed amount to victim impact statements; improper dismissal for cause of prospective jurors due to their views on the death penalty; underrepresentation of blacks and hispanics in the venire violating the sixth amendment's fair cross-section requirement; vagueness in the Texas capital sentencing statute; and unconstitutionality of the statute as applied to him.[8]  Clark's federal petition further alleged a **Batson**[9] violation at trial, and insanity precluding his execution.

---

[5]**Clark v. State**, 717 S.W.2d 910 (Tex.Crim.App. 1986) (*en banc*).

[6]**Clark v. Texas**, 481 U.S. 1059 (1987).

[7]In this regard, Clark alleged that his trial attorneys failed to conduct a proper investigation of his background and mental health; failed to ask prospective jurors on *voir dire* whether the difference in race between he and his victim would affect their impartiality; conducted his defense in the absence of a cohesive strategy; failed to cross-examine penalty-phase witnesses who testified to other crimes he committed; and presented prejudicial closing argument in the penalty phase.

[8]Clark reurged his **Penry** claim and further asserted that Tex. Code Crim. Proc. art. 37.071, because it precluded proper jury consideration of psychiatric evidence, rendered his counsel ineffective and violated the sixth, eighth, and fourteenth amendments.

[9]**Batson v. Kentucky**, 476 U.S. 79 (1986).

The district court dismissed Clark's federal petition without prejudice for failure to exhaust state remedies. The Texas Court of Criminal Appeals later adopted trial-court findings of fact and conclusions of law rejecting Clark's claims.

Clark then filed the instant petition under 28 U.S.C. § 2254, restating the claims asserted in his first federal application and adding an ineffective assistance of counsel claim arising from his trial attorney's failure to challenge racially-motivated use of peremptory strikes. The district court concluded that because Clark had presented evidence at the penalty phase with mitigating force beyond the scope of the Texas special issues, **Penry** required *vacatur* of his death sentence, but denied relief without an evidentiary hearing on the 14 other grounds asserted in his petition. Both parties timely appealed.

## Analysis

### 1. The **Penry** Claim

In **Penry v. Lynaugh**, the Supreme Court held Johnny Paul Penry's death sentence unconstitutional because in the absence of a supplemental jury instruction the jury could not give mitigating effect to his mental retardation and history of child abuse. Without a definition of "deliberately," it was unclear whether the jury could consider the evidence in relation to the first special issue, while the evidence was solely an aggravating factor with respect to the second special issue and had no relevance to the third.

The Court circumscribed the reach of **Penry** in **Graham v.**

**Collins**[10] and **Johnson v. Texas**.[11]  Gary Graham contended that his Texas jury was unable to give mitigating effect to his youth.  The Court held that Graham's claim was outside the scope of **Penry** and barred by **Teague v. Lane**[12] because it sought on collateral review the announcement of a new rule.  The Court explained that **Penry** stood for the limited proposition that a jury must be able to consider all mitigating evidence.  Consistent with **Penry**, Graham's jury was deemed able to give mitigating effect to the transient condition of youth in answering the future dangerousness issue.  Graham, however, sought the proscription of any limitation on the manner in which the jury could consider mitigating evidence.  In **Johnson**, which reached the Court on direct review without a **Teague** bar, the Court rejected that proposition.  Instead, it reaffirmed that states have discretion to structure the way in which capital juries consider mitigating evidence provided the evidence may be considered in some manner.

While Graham and Dorsie Lee Johnson cited youth as a factor with relevance beyond the Texas special issues, Clark contends that his jury was unable to give mitigating effect to the sexual abuse that he suffered as a young child.  We applied the teachings of **Graham** and **Johnson** to evidence of child abuse in **Motley v. Collins**.[13]  Motley's father subjected him to brutal beatings from

[10]113 S.Ct. 892 (1993).

[11]113 S.Ct. 2658 (1993).

[12]489 U.S. 288 (1989).

[13]_____ F.2d _____, 1994 WL 109209 (5th Cir. 1994).

the age of four until at least age thirteen; during that period he also forced the child to engage in anal and oral sex. A psychiatrist testified that such an upbringing tended to produce violent antisocial behavior, a condition which had the possibility of successful treatment. Observing that Motley's evidence, unlike Penry's, indicated that he was subject to change, we found that the jury was able to give mitigating effect to his evidence of child abuse in answering the future dangerousness inquiry, and we held that his habeas claim was barred by **Teague**.

Clark's evidence similarly pointed to the possibility of rehabilitation. Although declining to predict that he would no longer be a menace to society, he expressed confidence that treatment would alleviate his psychological "torments."

> I'm sure of that. . . . [I]f it's possible to acquire psychiatric help, I intend to do that; because since I've been at the rehab unit the past year, I've talked to the resident psychologist there. And he's helped me to work out a lot of problems and mental aspects of my character that I didn't understand.

Defense counsel elicited additional testimony about Clark's desire to change. The police officer who took Clark's confession testified that Clark purportedly agreed to cooperate because "he was tired of doing what he had done [and] wanted to change his life." Clark confirmed that sentiment.

> Yes, sir, it's very true; because for a long time -- I would say for at least a year -- I had begun to think about it seriously, the type of human being I had become and what I was doing and how it was causing people to feel that I was coming in contact with. I'm not a callous-type person. I knew they must have felt great amounts of fear, not just of their lives, but of their relatives involved. And because of that factor, knowing that what I was doing was getting more and more out of

7

> hand where it seemed I was losing control of it, I tried to think of different ways within myself to control the type of human being I was becoming.

This is not a picture of an individual who, like Penry, is unable to learn from his mistakes, but reflects an individual who wants to overcome the handicaps of the past and is optimistic about his ability to do so. This would militate in favor of a negative response to the question whether Clark would be a continuing threat to society. The jury was free to give the evidence mitigating effect in answering the second special issue. Clark, like Motley, would have us go beyond the scope of **Penry** and announce a new rule on collateral review. This we may not do. The district court erred in granting habeas relief.[14]

### 2. Ineffective Assistance of Counsel

Clark first contends on cross-appeal that the district court erroneously rejected, without an evidentiary hearing, his ineffective assistance of counsel claims. In **Strickland v. Washington**,[15] the Supreme Court held that in order to establish an ineffective assistance of counsel claim, the petitioner must

---

[14]Clark also relies on **Penry** to mount a facial challenge to the Texas death penalty statute. As noted, the Supreme Court limited **Penry** in **Graham** and **Johnson** and expressly reaffirmed **Jurek v. Texas**, 428 U.S. 262 (1976), approving the Texas statute. Clark also urges that **Penry** requires a definition of "deliberately" as that term is used in the first special issue, contrary to our prior decisions. The first special issue is not pertinent to our disposition of Clark's claim; therefore, we do not address his argument. Finally, Clark contends that the operation of the statute prevented his attorney from providing effective representation. That claim is foreclosed by **May v. Collins**, 948 F.2d 162 (5th Cir. 1991), <u>cert</u>. <u>denied</u>, 112 S.Ct. 907 (1992).

[15]466 U.S. 668 (1984).

demonstrate both the attorney's deficient performance and prejudice to the defense flowing therefrom. Habeas corpus petitioners seeking relief on this basis bear the burden of demonstrating both of these elements.[16] To satisfy the first **Strickland** prong a petitioner must demonstrate attorney performance outside the wide range of reasonable professional assistance, and must overcome a strong presumption of adequacy.[17] After surmounting this first hurdle, the petitioner further must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[18]

The district court need not hold an evidentiary hearing to resolve ineffective assistance claims where the petitioner has failed to allege facts which, if proved, would admit of relief[19] or where the state court record suffices for their disposition.[20] Under 28 U.S.C. § 2254(d), we must, absent one of the statutory exceptions,[21] accord a presumption of correctness to state court

---

[16]**Carson v. Collins**, 993 F.2d 461 (5th Cir) (citing **Martin v. Maggio**, 711 F.2d 1273 (5th Cir. 1983), cert. denied, 469 U.S. 1028 (1984)), cert. denied, 114 S.Ct. 265 (1993).

[17]**Strickland**, 466 U.S. at 699.

[18]**Id.** at 694.

[19]**Streetman v. Lynaugh**, 812 F.2d 950 (5th Cir. 1987) (citing **Townsend v. Sain**, 372 U.S. 293 (1963)).

[20]**Joseph v. Butler**, 838 F.2d 786 (5th Cir. 1988) (citing **Baldwin v. Blackburn**, 653 F.2d 942 (5th Cir. Unit A 1981), cert. denied, 456 U.S. 950 (1982)).

[21]28 U.S.C. §§ 2254(d)(1)-(8).

9

fact-findings in the course of resolving such claims.[22] Petitioners seeking to overcome this presumption must present "convincing evidence that the factual determination by the State court was erroneous."[23] Under this rubric there was no error in the district court's rejection of Clark's ineffective assistance claims without conducting an evidentiary hearing.

### a. Failure to Investigate Mental Health

Clark argues that failure by his trial attorneys to seek an independent psychiatric evaluation or to interview family members in support of a possible insanity defense constituted ineffective assistance of counsel. In the first state habeas corpus proceeding the Court of Criminal Appeals adopted a trial court finding that Clark's attorneys did not request additional psychiatric evaluation because (1) the examination conducted on motion of both prosecution and defense counsel by Dr. James Hunter at Rusk State Hospital appeared very thorough; (2) defense counsel had no reason to believe that another psychiatrist might reach a conclusion different from Dr. Hunter's; and (3) Dr. Hunter's evaluation was consistent with their own perception and observation of Clark. The court also adopted a finding that Clark specifically requested that counsel refrain from involving his family in the case. Clark suggests no inadequacy in these fact-findings which would deprive them of the presumption of correctness. Further, evidence that

---

[22]**Loyd v. Whitley**, 977 F.2d 149 (5th Cir. 1992), cert. denied, 113 S.Ct. 2343 (1993).

[23]28 U.S.C. § 2254(d).

habeas counsel believed Clark's sanity questionable after a three-hour interview and after obtaining two medical opinions in conflict with Dr. Hunter's, does not impel a contrary finding. Accepting the state court fact-findings, as statutorily directed, we must conclude that Clark's trial attorneys did not perform deficiently in failing to seek additional medical opinions or in failing to interview family members regarding Clark's sanity.[24]

b. *Voir Dire*

Clark asserts that, in view of the difference in race between him and his victims, his attorney's failure to inquire on *voir dire* into racial bias of all venire members constituted ineffective assistance of counsel. We doubt that counsel's failure in this regard amounted to constitutionally deficient performance, but need not resolve that question in view of Clark's failure to allege prejudice in satisfaction of the second **Strickland** prong. While Clark points out that questions regarding racial bias led to the dismissal for cause of at least one venire member, he does not claim that racial bias tainted the petit jury actually impaneled. This claim fails to allege a reasonable probability that, but for his attorney's failure to inquire into racial bias of prospective jurors, his trial would have reached a different result.[25] The

---

[24]**Barnard v. Collins**, 958 F.2d 634 (5th Cir. 1992) (where defense counsel had no reason to suspect that petitioner suffered from mental defect, failure of counsel to conduct an investigation into such matters not deficient performance), cert. denied, 113 S.Ct. 990 (1993).

[25]See **Moore v. Butler**, 819 F.2d 517 (5th Cir.) (denying certificate of probable cause in successive habeas corpus petition where defendant's allegations that he was tried for interracial

11

district court correctly disposed of this contention.

### c. Absence of Cohesive Strategy

Clark claims that his trial attorneys rendered ineffective assistance of counsel because they conducted the *voir dire*, guilt, and penalty phases of his trial in the absence of a cohesive strategy. The Texas state courts found that Clark's trial attorneys pursued a strategy of challenging the voluntariness of his confessions and consent to the search of his apartment or, failing that, of establishing absence of intent to kill. They further found that, if the jury convicted Clark of capital murder, his attorneys planned to establish in the penalty phase that the killing was in response to provocation, eliciting a "no" answer to the third special issue. Clark suggests no defect in these state court findings which would divest them of the presumption of correctness under section 2254(d) and presented no convincing evidence in rebuttal. In view of the highly inculpatory nature of Clark's confessions and the strong presumption of counsel's adequacy, employment of such a strategy would not constitute deficient performance under **Strickland**. We conclude that this contention lacks merit.

### d. Closing Argument at Penalty Phase

Clark vigorously attacks defense counsel's closing arguments at the penalty phase, complaining that they effectively invited the

---

offense before all-white jury in parish with history of racial discrimination failed to allege prejudice sufficient to support claim of ineffective assistance of counsel flowing from attorney's failure to inquire on *voir dire* as to potential racial bias of prospective jurors) (dictum), <u>cert</u>. <u>denied</u>, 482 U.S. 920 (1987).

jury to answer the first two special issues affirmatively. We disagree. Counsel's arguments were consistent with the defense trial strategy.

e. Lack of Objection to Peremptory Strikes

Clark's last ineffective assistance of counsel claim flows from his attorneys' failure to object to purported racially-motivated use of peremptory strikes by the prosecution. Clark's trial took place in 1982, when the onerous regime of **Swain v. Alabama**[26] rather than the more lenient standards set forth in **Batson** governed such claims. As Clark does not allege discriminatory use of peremptory strikes in prior cases by Harris County prosecuting authorities, he has failed to allege prejudice flowing from his attorneys' failure to raise a **Swain** objection.[27] Likewise, because **Batson** effected a clear break with preexisting precedent, failure in a pre-1986 case to urge application of the standards there announced would not fall short of the reasonable professional assistance guaranteed by the sixth amendment.[28] This contention lacks merit.

f. Failure to Cross-Examine Witnesses and to Object to Admission of Extraneous Offenses at Penalty Phase

The prosecutor called at the penalty phase several of Clark's victims to testify about other robberies and rapes. Defense counsel conducted only minimal cross-examination of these

---

[26] 380 U.S. 202 (1965).

[27] **Proctor v. Butler**, 831 F.2d 1251 (5th Cir. 1987), cert. denied, 488 U.S. 888 (1988).

[28] **Wiley v. Puckett**, 969 F.2d 86 (5th Cir. 1992).

witnesses.  Clark claimed that cross-examination might have shaken their identification of him as the assailant.  In his penalty phase testimony, however, he readily admitted to committing the offenses.  There could have been no prejudice from the alleged deficiency.

Clark also complains of trial counsel's failure to object to the admission of the extraneous offense testimony.  Defense counsel objected to any testimony concerning any extraneous offenses when the first witness was called; his objection was overruled.  In any event, the objection was meritless; unadjudicated extraneous offenses generally are admissible at the penalty phase of a capital murder trial.[29]  Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.

## 2. Fair Cross-Section Claim

Clark next claims underrepresentation of blacks and hispanics in the pool from which his petit jury was chosen.  Because the state court in Clark's second habeas corpus proceeding expressly relied on procedural default in rejecting this claim, it provides no basis for federal habeas corpus relief absent a showing of cause and prejudice or that a fundamental miscarriage of justice would result from failure to consider it.[30]  As Clark alleges no cause for his procedural default and inasmuch as failure to consider it will not result in manifest injustice, this assignment of error fails.

## 4. **Batson** Violation

---

[29]**Williams v. State**, 622 S.W.2d 116 (Tex.Crim.App. 1981), cert. denied, 455 U.S. 1008 (1982); **Milton v. Procunier**, 744 F.2d 1091 (5th Cir. 1984), cert. denied, 471 U.S. 1030 (1985).

[30]E.g., **Harris v. Reed**, 489 U.S. 255 (1989).

14

Clark claims that the district court erroneously rejected his **Batson** clain. We disagree. In the absence of contemporaneous objection, a claim that prosecutors made use of peremptory challenges in violation of the **Batson** standards cannot succeed.[31] As Clark concedes his failure to raise this claim at trial, this contention fails.

5. <u>Other Claims</u>

Clark gives only cursory attention to his remaining claims. Our review of the record persuades that none has merit.

The judgment of the district court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED with instructions to deny the petition for a writ of habeas corpus.

---

[31]**Jones v. Butler**, 864 F.2d 348 (5th Cir. 1988) (on rehearing), <u>cert</u>. <u>denied</u>, 490 U.S. 1075 (1989).