# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-DR-00592-SCT

*RODNEY GRAY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/25/1996 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION COUNSEL |
| | BY: ROBERT RYAN |
| | LOUWLYNN VANZETTA WILLIAMS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | APPLICATION FOR LEAVE TO SEEK POST-CONVICTION RELIEF DENIED - 09/16/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     On January 25, 1996, a Newton County jury convicted Rodney Gray of the capital murder of

Grace Blackwell.  This Court thereafter affirmed Gray's conviction and sentence on direct appeal.  ***Gray***

***v. State***, 728 So.2d 36 (Miss. 1998).  Gray filed a petition for writ of certiorari with the United States

Supreme Court, which that Court denied. *Gray v. Miss.*, 526 U.S. 1055, 119 S.Ct. 1366, 143 L.Ed.2d 526 (1999). Gray now seeks leave to pursue post-conviction relief in the trial court.

¶2. The purpose of post-conviction proceedings is to bring forward facts to the trial court that were not known at the time of the judgment. *Williams v. State*, 669 So.2d 44, 52 (Miss. 1996). The procedure is limited to those facts and matters which could not or should not have been brought at trial or on direct appeal. *Id.*; Miss. Code Ann. §§ 99-39-1 to -29 (Rev. 2000 & Supp. 2003). If newly discovered evidence would likely produce a different result or verdict and the proponent shows that the evidence was "discovered since the trial, that it could not have been discovered before the trial by the exercise of due diligence, that it is material to the issue, and that it is not merely cumulative, or impeaching" then such evidence warrants a new trial. *Ormond v. State*, 599 So.2d 951, 962 (Miss. 1992).

## FACTS

¶3. On the morning of August 15, 1994, 79-year-old Grace Blackwell drove to the drive-through teller window of her bank in Jasper County. Blackwell presented a blank check and asked the teller to fill the check out in the amount of $1200. The teller's view of the car's back seat was blocked by hanging clothes. The teller testified that after giving her the money, she heard Blackwell say, "I'm hurrying, I'm hurrying." The teller notified the police, and they went to Blackwell's home only to find the front door open and the phone disconnected. Witnesses testified that they saw Blackwell's car around noontime being driven by a young black male, and one witness identified the driver as Rodney Gray.

¶4. Police found Blackwell's body at the end of a bridge in Newton County at 1:40 p.m. Her car was found elsewhere in Newton County. Investigators determined that Blackwell had been killed by a shotgun blast to the mouth. Later, an autopsy revealed that Blackwell had also been raped and that her body had been run over by a car.

¶5.     Investigators questioned Rodney Gray on August 15 about Blackwell's disappearance and arrested him that same day. While in jail, Gray phoned his girlfriend, Mildred Curry, to tell her that he had hidden money in a bathroom vent. A search of Curry's trailer turned up $1,123 hidden in the bathroom air duct. The clothes and boots which Gray had been wearing on the day of the murder were found in a bucket behind Curry's trailer.

¶6.     A Newton County grand jury indicted Gray for the capital murder of Grace Blackwell in violation of Miss. Code Ann. § 97-3-19(2)(e) (murder while engaged in the commission of the crime of kidnapping/and/or rape). Attorneys Thomas D. Lee and B. Jackson Thames, Jr. represented Gray in the trial court. At trial, FBI experts testified that the foot print at the Blackwell home came from Gray's boot and that tests on DNA samples taken from Blackwell's undergarments showed that Gray was the likely source. The probability that the semen came from someone other than Gray was 1 in 446,000,000. Further testimony came from Russell Saunders, one of Gray's cell mates, who testified that while in jail Gray told him that he (Gray) had forced Blackwell to withdraw money from the bank, raped her and then shot her with a .410 shotgun. The jury found Gray guilty of capital murder and then heard evidence as to mitigating and aggravating circumstances pertinent to the determination of the sentence which should be imposed on Gray. After hearing testimony from several witnesses from the State and the defense, the jury reached a unanimous verdict finding that Rodney Gray should suffer death for the capital murder of Blackwell.

## ANALYSIS

### I.     Ineffective Assistance of Counsel:

¶7.     Gray alleges several instances of ineffective assistance of counsel in support of his motion for post-conviction relief. The benchmark for judging any claim of ineffectiveness of counsel must be whether

3

counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To receive post-conviction relief for ineffective assistance of counsel, a claimant must demonstrate (1) that counsel's performance was deficient **and** (2) that the deficiency prejudiced the defense of the case. *Id.* at 687. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. *Stringer v. State*, 454 So.2d 468, 477 (Miss. 1984) (citing *Strickland*, 466 U.S. at 687). There is no constitutional right to errorless counsel. *Cabello v. State*, 524 So.2d 313, 315 (Miss. 1988). The defendant has a right to have competent counsel, but this right does not entitle the defendant to have an attorney who makes no mistakes at trial. *Mohr v. State*, 584 So.2d 426, 430 (Miss. 1991). Thus, the focus of the inquiry is whether counsel's assistance was reasonable considering all the circumstances. *Stringer*, 454 So.2d at 477.

¶8. Under the first prong of the *Strickland* test, defense counsel is presumed competent. *Cabello*, 524 So.2d at 315. A reviewing court must strongly presume that counsel's conduct falls within a wide range of reasonable professional assistance. Furthermore, the reviewing court must consider whether the challenged act or omission might be sound trial strategy. *Stringer*, 454 So.2d at 477.

¶9. In evaluating the second prong of the *Strickland* test, a reviewing court must determine whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. This means a probability sufficient to undermine the confidence in the outcome. *Mohr*, 584 So.2d at 430. Additionally, in a death penalty case, the ultimate inquiry is "whether there is a reasonable probability that, absent the errors, the sentencer--including an appellate court, to the extent

4

it independently re-weighs the evidence--would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695. If the post-conviction application fails on either of the *Strickland* prongs, the analysis of that issue ends. *Davis v. State*, 743 So.2d 326, 334 (Miss. 1999) (citing *Foster v. State*, 687 So.2d 1124, 1130 (Miss. 1996)).

### A.    Change of Venue

¶10.    Gray's first allegation of ineffective assistance of counsel is that his trial counsel failed to properly argue a motion for change of venue. Gray raised this issue on direct appeal to this Court after his conviction. *Gray v. State*, 728 So.2d at 63. At trial, the motion was accompanied by two affidavits alleging that Gray could not receive a fair trial in Newton County because the crime involved a black defendant and a white victim. During the hearing on the motion, the State presented six witnesses who testified to the contrary. *Id.* The trial court denied the motion, and this Court held that the State had successfully rebutted the presumption that Gray could not receive a fair trial in Newton County. *Id. at 66.*

¶11.    This Court addressed the issue of whether the trial court properly denied the motion to transfer venue on Gray's direct appeal. Thus, Gray is now procedurally barred by res judicata from relitigating this issue through post-conviction relief. Miss. Code Ann. § 99-39-21(3) (1972 & Supp. 2003). Furthermore, Gray cannot relitigate this issue in the guise of an ineffective assistance of counsel claim. *Williams v. State*, 722 So.2d 447, 449 (Miss. 1998). On the merits, Gray offers as evidence to support his request for post-conviction relief only the motion to transfer venue and attached newspaper articles presented to the trial court. However, Gray does not present new or additional evidence not offered or unavailable to the trial court regarding the issue of community prejudice and whether he could receive a fair trial in Newton County. Accordingly, this issue is without merit.

### B.    Continuance

¶12.    Gray next argues that his trial counsel were ineffective in failing to seek a continuance of the trial after the motion for change of venue was denied. Inasmuch as the motion for change of venue was properly denied, counsel cannot be faulted for deciding not to seek a continuance. The failure to raise objections or make motions which have no merit cannot be viewed as poor representation. *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). The motion to change venue was denied on October 30, 1995, and trial was not scheduled to begin until November 27, 1995. Trial counsel did in fact file a motion for continuance based upon other matters on November 17, 1995, and the trial was postponed until January 22, 1996. Thus, Gray's trial counsel requested and obtained a continuance lasting 56 days from the date of the trial setting and 84 days from the date of the denial of the motion to transfer venue. Accordingly, this issue is without merit.

### C.    Motion to quash the jury venire

¶13.    Gray next asserts that his trial counsel were ineffective by failing to develop an "adequate and sufficient record" as to potential black jurors struck by the State for cause. After the removal of jurors for cause, Gray's trial counsel moved to quash the venire for two reasons: (1) there was an insufficient number of African-Americans on the panel in relation to the percentage of blacks in Newton County, and (2) the printed juror summonses mailed to potential jurors had "capital murder" printed on them in bold print, thus prejudicing the prospective jury pool. The trial court denied this motion. Gray asserts that the motion to quash the jury venire should have been granted and that but for trial counsel's ineffective representation, the outcome would likely have been different.

¶14.    Gray fails to explain with any specificity in what manner the record was purportedly deficient. To establish a prima facie case alleging that a jury represents an unfair cross-section of the community, Gray must demonstrate: "(1) that the group alleged to be excluded is a "distinctive" group in the community; (2)

6

that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Lanier v. State*, 533 So.2d 473, 477 (Miss. 1988). Gray offered no evidence at trial or in the present case demonstrating "systematic exclusion." The record before this Court shows that the trial judge overruled many of the State's challenges for cause and that the trial judge excluded both black and white jurors for valid reasons of cause, including hardship. Thus, Gray has failed to establish a prima facie case of systematic exclusion under the standard set out in *Lanier*. Gray's inability to meet the standard set out in *Lanier* also prevents him from demonstrating that his trial counsel's performance was deficient under the first prong of the *Strickland* standard.

¶15. In regard to Gray's claim that trial counsel was ineffective by failing to offer proof of jury prejudice resulting from the words "capital murder" being printed on the jury summons form, the record shows that trial counsel conducted a voir dire of the panel regarding potential prejudice resulting from the jury summons. *Gray v. State*, 728 So.2d at 66. Gray's trial counsel at both the trial and direct appellate level could offer no proof besides speculation that the venire was prejudiced as a result of the summons. *Id.* at 66-67. Furthermore, Gray has presented no additional evidence of prejudice of the jury venire with his petition for post-conviction relief. Accordingly, the issue of ineffective assistance of counsel regarding the motion to quash the jury venire is without merit.

### D. Motion to dismiss

¶16. Next, Gray alleges that trial counsel failed to properly challenge the indictment, arguing that the underlying felonies listed in the indictment caused it to be substantially defective and counsel's motion to dismiss the indictment should have been granted. The Court analyzed this issue on direct appeal and found

7

it to be procedurally barred. Despite the bar, the Court further analyzed the issue of the sufficiency of the indictment and found it to be without merit. ***Id.***

¶17. The indictment charged that Rodney Gray "did willfully, unlawfully, feloniously and of his malice aforethought kill and murder Grace Blackwell, a human being, while engaged in the commission of the crime of kidnaping [sic] and/or rape." Gray asserts that the indictment fails to state the essential elements of the offense charged and that the motion to dismiss was denied because trial counsel was ineffective in "properly addressing the issue." On direct appeal, this Court noted that pursuant to Rule 7.06 of the Uniform Rules of County and Circuit Court, an indictment is sufficient where it discloses: 1) the name of the accused; 2) the date on which the indictment was returned; 3) a statement that the prosecution is brought in the name of the State; 4) the county and judicial district in which the indictment is brought; 5) the date on which the offense was committed; 6) the signature of the grand jury foreman; and, 7) the words, "against the peace and dignity of the state." ***Gray***, 728 So.2d at 70. The Court specifically held that the indictment adequately put Gray on notice of the charge of capital murder and that it was not necessary to specifically set forth all the elements of the underlying felonies contained in the indictment. ***Id.*** at 70-71. Thus, the second prong of the ***Strickland*** test requiring that, but for counsel's errors the result would have been different, is not met. Furthermore, the evidence presented at trial was sufficient to prove both kidnaping and rape beyond a reasonable doubt. The motion to dismiss the indictment was properly denied simply because it lacked merit and not because it was ineffectively argued. The claim of ineffective assistance of counsel regarding the motion to dismiss the indictment is without merit.

### E. Jail house confessions

¶18. Gray alleges that trial counsel were ineffective for failure to exclude from evidence the statements which Gray made to his cell mates as well as the failure to secure an adequate cautionary instruction after

8

the statements were admitted. Russell Saunders and Cleveland McCall both shared a cell with Gray after his arrest, and both testified at trial that Gray had admitted his guilt to them. However, Gray's trial counsel cross-examined both of them on their testimony. *Id.* at 71-72. On direct appeal, this Court initially held the issue to be procedurally barred but went on to alternatively find that the issue had no merit.

> Gray claims the two inmates stood to gain something in exchange for their testimony. This court has not viewed such testimony favorably. *See McNeal v. State*, 551 So.2d 151, 158 (Miss. 1989). The evidence in the record before the court does not establish the inmates received anything in exchange for their statements. True, Saunders was made a trusty sometime after he told the sheriff what Gray had said, but his testimony indicated that he had served sufficient time to become a trusty. The charges against McCall were dropped after the man who claimed McCall had stolen his car failed to show up in court.

*Gray*, 728 So.2d at 72. Since the Court has previously considered this issue both procedurally and on the merits and no new evidence has been provided in the petition for post-conviction relief, the doctrine of res judicata applies and bars reconsideration. Miss. Code Ann. § 99-39-21(3) (1972 & Supp. 2003).

### F.    Failure to develop/present mitigating evidence

¶19.    Gray alleges that trial counsel were ineffective by failing to investigate and present mitigating evidence during the sentencing phase of the trial. Gray argues that if trial counsel had conducted a thorough investigation of his background, ample evidence of mental illness and mental retardation would have been discovered and could have been presented to the jury for mitigation in sentencing. As evidence of this assertion, Gray's current counsel attaches the affidavits of Annie Lois Tatum (Gray's mother), Deirdre Jackson and Tomika Harris of the Mississippi Office of Capital Post-Conviction Counsel, Stephanie Wilson and Melissa Jones (Gray's older sisters), and Ola Jones (Gray's former teacher). Gray argues that the information obtained post-trial from the above affiants and other individuals who knew him as a child supports his claim that he suffers from mild mental retardation and that had such information been presented

to the jury, there is a reasonable probability that the outcome of the sentencing proceeding would have been markedly different.

¶20. The failure to present a case in mitigation during the sentencing phase of a capital trial is not, per se, ineffective assistance of counsel. *Williams v. State*, 722 So.2d at 450 (citing *Williams v. Cain*, 125 F.3d 269, 277 (5th Cir. 1997)). Furthermore, where a motion for post-conviction relief makes no showing that interviewing additional witnesses would have produced a different outcome, the petitioner has failed to make out a prima facie claim of ineffective assistance of counsel. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *Foster v. State*, 687 So.2d at 1134. In addition, this Court has previously held that so long as trial counsel presents to the sentencing jury evidence of a capital defendant's educational background, psychological profile and childhood experience, there is no professional error under the *Strickland* standard. *Brown v. State*, 798 So.2d 481, 498-99 (Miss. 2001). In the present case, Gray's defense attorneys did, in fact, present a case in mitigation for the jury to consider.

¶21. At the sentencing phase of the trial, defense counsel called Rosa Gallaspy and Luise Bradley to testify that they had watched Gray grow up and that he had no predisposition toward violence. Gray's attorney also called Roosevelt Jones, a local minister, and Hattie Morgan, a neighbor, to give similar testimony. Rodney Gray's mother, Annie Tatum, testified at the sentencing phase of the trial that her divorce from Rodney's father was a source of emotional trauma to Rodney and that the divorce adversely impacted his performance in school.

¶22. In regard to Gray's mental capacity, the trial court ordered that Gray be given a mental assessment, and forensic psychologist Charlton S. Stanley, Ph.D., issued a report that Gray possessed a full scale IQ score of 80. The report characterized Gray as "dull normal," but not as mentally retarded. Upon the basis of Dr. Stanley's report, trial counsel were not deficient according to the *Strickland* standard in failing to

10

offer further evidence of mental retardation. Evidence that Gray was "dull normal" would have had little if any persuasive effect on the jury in mitigation. The issue of failure to present mitigating evidence is a close call, but according to the evidence presented, Gray's trial counsel were not ineffective according to the *Strickland* standard.

### G. Failure to present a meaningful defense

¶23. Gray's final claim of ineffective trial counsel is based on counsel calling only five defense witnesses and in not having Gray testify in his own behalf. Decisions regarding which witnesses to call are decidedly within the realm of trial strategy. *King v. State*, 679 So.2d 208, 211 (Miss. 1996). Gray offers no affidavits, documents or other evidence to support this claim as required by Miss. Code Ann. § 99-39-7(e). Furthermore, the record discloses that the trial court explained to Gray in great detail that he had a constitutional right to testify in his own behalf but he voluntarily chose not to do so. The claim of ineffective assistance of counsel in failing to present a meaningful defense is without merit.

¶24. Inasmuch as all the alleged instances of ineffective assistance of counsel are without merit, it follows that the entire issue is without merit.

### II. Mental Retardation within the meaning of *Atkins v. Virginia*

¶25. *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), held that execution of a mentally retarded prisoner constitutes cruel and unusual punishment prohibited by the Eighth Amendment to the U.S. Constitution. The United States Supreme Court has held that the Eighth Amendment is incorporated by the Fourteenth Amendment. *Robinson v. Cal.*, 370 U.S. 660, 667, 82 S.Ct. 1417, 1421, 8 L.Ed.2d 758 (1962). The *Atkins* Court held the death penalty to be "excessive" as applied to mentally retarded inmates and found that the Constitution "places a substantive restriction on the State's power to take the life" of a mentally retarded prisoner. *Atkins*, 536 U.S. at 321. The Court found

that there existed a national consensus which called into question "the relationship between mental retardation and the penological purposes served by the death penalty. They further recognized that "clinical definitions of mental retardation require not only sub-average intellectual functioning, but also significant limitations in adaptive skills such as communication, self-care, and self-direction that became manifest before age 18." *Id.* at 317-18. Furthermore, the Supreme Court stated:

> Mentally retarded persons frequently know the difference between right and wrong and are competent to stand trial. Because of their impairments, however, by definition they have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others. There is no evidence that they are more likely to engage in criminal conduct than others, but there is abundant evidence that they often act on impulse rather than pursuant to a premeditated plan, and that in group settings they are followers rather than leaders. Their deficiencies do not warrant an exemption from criminal sanctions, but they do diminish their personal culpability.

*Id.* at 317-18.

¶26.    Determining who is mentally retarded for purposes of this prohibition has been left to the individual States.

> Not all people who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a national consensus. As was our approach in ***Ford v. Wainwright***, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), with regard to insanity, "we leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences." *Id.*, at 399, 405, 416- 417, 106 S.Ct. 2595.

*Atkins*, 536 U.S. at 317. This Court has adopted the definition of mental retardation as promulgated by the American Psychiatric Association [APA], which defines mental retardation as follows:

> The essential feature of Mental Retardation is significantly sub-average general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 years (Criterion C). Mental Retardation has many different etiologies and

12

may be seen as a final common pathway of various pathological processes that affect the functioning of the central nervous system.

*American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* 41 (4th ed. 2000). "Mild" mental retardation is typically used to describe people with an IQ level of 50-55 to approximately 70. *Atkins*, 536 U.S. at 42-43; *Foster v. State*, 848 So.2d 172, 174 (Miss. 2003).

¶27.    Based upon the evidence presented in the petition for post-conviction relief, in Gray's reply to the state's response to his petition,[1] and the trial record, Gray has not established that he is entitled to a hearing on the issue of mental retardation.  Gray provides neither affidavits of experts opining his mental retardation, nor is there any qualified opinion contained in the trial record, other than that of forensic and counseling psychologist, Charlton S. Stanley, Ph.D., who examined Gray before trial by order of the court to determine whether Gray was competent to stand trial and whether there were possible mitigating circumstances in the case.  Among the several tests[2] given by Dr. Stanley was the Wechsler Adult Intelligence Scale, which showed Gray's full scale IQ score of 80, Verbal IQ score of 81, and non-verbal IQ score of 81, all of which Dr. Stanley classified as "low dull normal."  A score on the Wechsler test of 80-81 is well above the maximum score for "mild" mental retardation as defined by the APA. *Diagnostic and Statistical Manual of Mental Disorders*.  42-43 (4th ed. 2000).

¶28.     Instead, Gray's post-conviction relief counsel presents elementary and middle school grade records, none of which indicates that his IQ had been tested, or that he was in special education classes.

---

[1] Gray's reply was filed December 31, 2003, and no further reply or supplementation was filed subsequent to this Court's definitive opinion, published on May 20, 2004, regarding the standards and procedures to be followed in order to obtain an evidentiary hearing in the trial court on the issue of mental retardation.  See *Chase v. State*, 873 So.2d 1013 (Miss. 2004).

[2] These tests were administered in 1995, when Gray was 23 years old.  There is no mention in the record before us that the Minnesota Multiphasic Personality Inventory-II was administered.  See *Foster*, 848 So.2d at 174.

Counsel also presented affidavits of Gray's immediate family members regarding the deficiencies in his adaptive skills as well as his poor performance in school. In addition there were affidavits from persons from the Mississippi Office of Capital Post-Conviction Counsel, and Ola Jones, identified by Gray's post-conviction counsel as one of Gray's former teachers. However, Jones's name does not appear in the school records where the names of all Gray's teachers are shown, nor does her affidavit state that she ever taught Gray. Rather, she states that she is currently principal of Bay Springs Elementary School, and that "From what I can recall, Rodney was in the special education program at Bay Springs Middle School between the grades of 4th and 8th. I am not sure at what point he was enrolled in the special education program but it would have been during that time period." She also states in her affidavit that "I am not sure what his IQ tests scores were. I know that he had to have had a learning disability or he would not have been placed in the special education program." Although she said that she "taught self-contained children" she did not say that she ever taught Gray. There is no explanation given as to why Jones, as the current principal of the same elementary and middle school attended by Gray from 1978-85, would give such vague statements rather than referring to the school records and providing specific information.

¶29. Gray's counsel bases his assertion of Gray's mental retardation, with onset before age 18, almost entirely on Jones's affidavit. The educational records reflect a child who at times struggled in school, but they do not offer any proof that Gray's difficulties in school were as a result of mental retardation. Furthermore, none of the affiants, other than Dr. Stanley, possess the requisite qualifications to determine mental retardation, and his nine page report of his evaluation of Gray nowhere contains any mention of mental retardation.

¶30. The Post-Conviction Collateral Relief Act places the burden upon Gray to prove that he is mentally retarded to such an extent that he may avoid the death penalty. Miss. Code Ann § 99-39-23(7) (Supp. 2000). Gray has not met his burden, and this issue is without merit.

### III. DNA evidence and the right to confront witnesses

¶31. Citing the confrontation clause of the Sixth Amendment, Gray asserts that the testimony of Melissa Smrz, a forensic serologist employed in the FBI laboratory, should have been stricken at trial because she was not the actual examiner who performed the testing on the samples. The FBI's DNA Laboratory performed tests on semen samples recovered from the victim's underwear. Smrz stated at trial that she supervised the sampling procedures which were actually performed by a lab technician. Smrz testified that the results showed the mathematical probability that the donor was someone other than Gray was 1 in 446,000,000. Gray alleges that he was denied his Sixth Amendment right to confront the witnesses against him because the lab technician was not available.

¶32. This objection was presented to the trial judge who found that Smrz was the head of her department and that the tests were performed under her direction and control. *Gray*, 728 So.2d at 56. On direct appeal, this Court considered this issue on the merits and affirmed the trial court:

> In the case sub judice Gray was able to confront and cross-examine the expert who evaluated the autoradiographs and did the sizing procedure, Ms. Smrz. She based her opinions and testimony on the results of her examinations of the test results. This was permissible testimony under Miss. R. Evid. 703 and did not violate Gray's Sixth Amendment right to confront witnesses. He was able to cross-examine and confront Ms. Smrz. Therefore, this issue is without merit.

*Id.* at 57. The issue of the admissibility of the DNA evidence having been previously raised and rejected is now procedurally barred by the doctrine of res judicata. Miss. Code Ann. § 99-39-21(3).

### IV. Jury instructions and *Tison v. Arizona*

15

¶33.    Gray argues for the first time that jury instructions given at the sentencing phase of the trial violated his Eighth Amendment rights because the instructions allowed the jury to impose the death sentence without finding that he intended to kill his victim.  Gray claims that the instructions were given in contravention of the United States Supreme Court holding in *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987).  In that case, however, the Court held that imposing the death penalty in felony-murder cases upon defendants whose participation in the underlying felony was major and whose mental state was one of reckless indifference to the value of human life was not a violation of the Eighth Amendment prohibition against cruel and unusual punishment. *Id.* at 157-58, 107 S.Ct. at 1688.  In the present case, a challenge to the jury instructions could have been made at both trial and on direct appeal but since it was not, Gray is now procedurally barred from consideration pursuant to Miss. Code Ann. § 99-39-21(1). *See Brown v. State*, 798 So.2d at 491.  Unless Gray can demonstrate cause for failure to raise this issue and actual prejudice resulting from the trial court's actions, the issue of improper jury instructions is without merit.  Miss. Code Ann. § 99-39-21(1).

¶34.    The jury was instructed in accordance with Miss. Code Ann. § 99-19-101(7) which provides:

> (7) In order to return and impose a sentence of death the jury must make a written finding of one or more of the following:
>
> > (a) The defendant actually killed;
> > (b) The defendant attempted to kill;
> > (c) The defendant intended that a killing take place;
> > (d) The defendant contemplated that lethal force would be employed.

It is proper to instruct a jury that it may consider all of the intent factors contained in Miss. Code Ann. § 99-19-101(7), yet may properly find only one of these factors, as the evidence permits. *Jordan v. State*, 786 So.2d 987, 1026 (Miss. 2001).  This Court has previously held that the jury can be instructed on all of these factors at the conclusion of the sentencing phase.  Neither *Tison* nor its predecessor, *Enmund*

16

*v. Florida*, 458 U.S. 782, 102 S.Ct. 2268, 73 L.Ed.2d 1140 (1982), requires more than one of the above findings. *Walker v. State*, 863 So.2d 1, 26 (Miss. 2003).

¶35.    In order to return a death sentence, the jury must find beyond a reasonable doubt the existence of at least one of these factors. *Id.* There must, of course, be sufficient evidence to support the jury's finding of any such factors. *Carr v. State*, 655 So.2d 824, 838-39 (Miss. 1995). The jury found that Gray actually killed Grace Blackwell. Accordingly, Gray cannot prove cause and actual prejudice under Miss. Code Ann. § 99-39-21(1) from his failure to raise this issue before the trial court or on direct appeal, and his claim fails for lack of merit.

¶36.    Gray further alleges that the Mississippi death penalty statutes are unconstitutional in that they are applied to all defendants who are guilty of felony murder. This Court has held previously that Mississippi's capital murder scheme is not unconstitutional simply because it makes the death penalty a possible punishment for felony murder without a requirement to prove an intent to kill. *See Simmons v. State*, 805 So.2d 452, 507 (Miss. 2001). This same argument has been rejected as it relates to depraved heart murder. *Grayson v. State*, 806 So.2d 241, 252 (Miss. 2001). Gray's constitutional rights under the Eighth Amendment are safe-guarded since the factors contained in Miss. Code Ann. § 99-19-101(7) require that the jury find the requisite intent set forth in *Enmund* and *Tison* before a death penalty verdict can be returned. In the present case, the jury was properly instructed pursuant to Miss. Code Ann. § 99-19-101(7) and found all four of those factors. That is all that is required by the decisions of the United States Supreme Court and the federal constitution. Gray has simply failed to show the necessary cause and actual prejudice required by Miss. Code Ann. § 99-39-21(1) to overcome the procedural bar to consideration of this claim.

### V.    Form of the verdict

¶37. Gray next argues that the form of the sentencing verdict was defective for failure to include a written confirmation that the jury found the aggravating factors listed in Miss. Code Ann. § 99-19-101 beyond a reasonable doubt. This claim could have been raised at trial and on direct appeal, but was not. The matter is now procedurally barred from consideration for the first time on collateral review. Miss. Code Ann. § 99-39-21(1).

¶38. Without waiving the procedural bar, we determine that the issue is without merit. In the sentencing phase of capital trials, statutory aggravating circumstances must be unanimously found beyond a reasonable doubt. *White v. State*, 532 So.2d 1207, 1219 (Miss. 1988). In the present case, State's Jury Instruction No. 2 specifically required that the jurors "must unanimously find, beyond a reasonable doubt that one or more of the preceding aggravating circumstances exists in this case to return the death penalty." There is an abundance of case law stating that it is presumed that jurors follow the instructions of the court. *Payne v. State*, 462 So.2d 902, 904 (Miss. 1984) (internal citations omitted).

¶39. The jury in Gray's trial returned a written verdict announcing that they had unanimously found the existence of the aggravating circumstances. Once a defendant has been convicted in the guilt phase of a capital trial, the presumption of innocence disappears. *Delo v. Lashley*, 507 U.S. 272, 278, 113 S.Ct. 1222, 1225-26, 122 L.Ed.2d 620 (1993). It necessarily follows that Gray's jury found the aggravating circumstances to exist beyond a reasonable doubt even though those particular words were not written on the face of the verdict. This issue is without merit.

## VI. Cumulative Error

¶40. Next, Gray argues generically that the alleged preceding errors, taken as a whole, deprived him of a fair trial. This Court has previously held that "where there is 'no reversible error in any part, . . . there is no reversible error to the whole." *Byrom v. State*, 863 So.2d 836, 847 (Miss. 2003) (quoting *McFee*

*v. State*, 551 So.2d 130, 136 (Miss. 1987)). Since Gray has not yet shown any actual error by the trial court, there can be no cumulative effect and no adverse impact upon his constitutional right to fair trial. This issue is without merit.

### VII.   Cumulative Effect of the Failure to Make Certain Objections

¶41.    Next, Gray contends there were five instances of ineffective assistance of counsel whose cumulative effect was to deprive him of a fundamentally fair trial. These alleged omissions include: (1) failure to object to the State's use of jury strikes for cause against African-Americans; (2) failure to object to the jury instructions S-3, S-4 and S-6; (3) failure to object to the testimony of Gray's cell mates; (4) failure to object to the prejudicial effect of pretrial publicity; and, (5) failure to submit jury instructions to weigh informant testimony with caution. Gray also argues that he was denied his fundamental rights due to his trial counsel's failure to cite authority concerning issues presented on direct appeal.

¶42.    With regard to the first alleged instance of nonfeasance concerning the State's use of jury strikes, this particular claim has been previously discussed herein and found to be without merit. Also, the second claim regarding jury instructions S-3 and S-4 was raised on direct appeal and found to be without merit. *Gray*, 728 So.2d at 75-76. The record shows that trial counsel did in fact object to instruction S-6 although on grounds different from what Gray now asserts should have been the basis. *Id.* at 60-61. The decision must be attributed to trial strategy by defense counsel.

¶43.    The third claim concerning the testimony of Gray's cell mates, Saunders and McCall, was raised and rejected on direct appeal. Although this Court employed a procedural bar on direct appeal, it nonetheless analyzed the merits of the claim and found them lacking. *Id.* at 71-72. As for the fourth claim of failing to defuse the potential adverse impact of pretrial publicity, defense counsel sought a change of venue as discussed previously on direct appeal. As analyzed earlier, this Court discussed the effect of local

news coverage within that context and found no irrefutable presumption that Gray could not receive a fair trial. *Id.* at 67. This Court also addressed Gray's fifth instance of alleged misconduct pertaining to informant testimony on direct appeal and found the issue to be without merit. *Id.* at 72.

¶44.    Gray is now procedurally barred by res judicata from relitigating the issues previously before this Court on direct appeal through the present petition for post-conviction relief. Miss. Code Ann. § 99-39-21(3). With no error to be found on the part of trial counsel in these enumerated instances, there can be no cumulative error to have deprived Gray of a fundamentally fair trial. *Byrom*, 863 So.2d at 847. Thus, this issue is without merit.

## VIII.    Aggravating Factors Not Charged in the Indictment

¶45.    Next, Gray argues that his death sentence must be vacated because the aggravating circumstances of capital murder found by the jury were not included in the indictment. Gray relies on the rulings of the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In *Apprendi* and *Ring*, the Court held unconstitutional sentencing procedures where a judge rather than a jury determined whether there were aggravating circumstances sufficient to warrant imposition of the death penalty.

¶46.    Specifically, in *Ring* the Court addressed the issue of whether the Arizona capital sentencing process as upheld in *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), was constitutional under *Apprendi*. In *Walton*, the Supreme Court held that the Arizona capital sentencing process in which the jury decided guilt and the judge made findings on aggravating factors was constitutional. The Supreme Court in *Ring* overruled the *Walton* case stating:

[W]e overrule **Walton** to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty. *See* 497 U.S., at 647-649, 110 S.Ct. 3047. Because Arizona's enumerated aggravating factors operate as "the functional equivalent of an element of a greater offense," **Apprendi**, 530 U.S., at 494, n. 19, 120 S.Ct. 2348, the Sixth Amendment requires that they be found by a jury.

**Ring**, 536 U.S. at 16.

¶47.     Despite Gray's argument, the Supreme Court's holding in **Ring** is limited in scope.  The Court in **Ring** specifically stated that "Ring's claim is tightly delineated:  He contends only that the Sixth Amendment required jury findings on the aggravating circumstances asserted against him." **Id.** at 9 n.4.  Unlike Gray, Ring did not contend that his indictment was constitutionally defective.  Thus, the issue of whether the aggravating circumstances must be included in the indictment is not controlled by the holding in **Ring**. *See* **Stevens v. State**, 867 So.2d 219, 226-27 (Miss. 2003).

¶48.      A defendant is not entitled to formal notice of the aggravating circumstances to be employed by the prosecution and that an indictment for capital murder puts a defendant on sufficient notice that the statutory aggravating factors will be used against him.  **Smith v. State**, 729 So.2d 1191, 1224 (Miss. 1998) (relying on **Williams v. State**, 445 So.2d 798 (Miss. 1984)).  The Court in **Williams** said:

> We believe that the fact that our capital murder statute lists and defines to some degree the possible aggravating circumstances surely refutes the appellant's contention that he had inadequate notice.  Anytime an individual is charged with murder, he is put on notice that the death penalty may result.  And, our death penalty statute clearly states the only aggravating circumstances which may be relied upon by the prosecution in seeking the ultimate punishment.

**Williams**, 445 So.2d at 804-05.  In addition, this Court has recently rejected similar arguments in **Stevens v. State**, 867 So.2d 219, 225-27 (Miss. 2003).  Thus, the issue of the omission of aggravating circumstances in the indictment is without merit.

### IX. Death Sentence Disproportionate to the Offense

¶49.   Finally, Gray asserts that his death penalty sentence was disproportionately imposed.  On direct appeal, this Court conducted a proportionality review as required by the Eighth Amendment and specifically found that Gray's death sentence was not disproportionate. *Gray*, 728 So. 2d at 78. Consequently, the issue is now procedurally barred from collateral review. Miss. Code Ann. § 99-39-21(3).

### CONCLUSION

¶50.   The Application for Leave to File a Petition for Post-Conviction Relief in the Trial Court filed by Rodney Gray is denied.

¶51.   **APPLICATION FOR LEAVE TO SEEK POST-CONVICTION RELIEF, DENIED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.  DIAZ, J., NOT PARTICIPATING.**