William JOHNSON, Jr.,
Petitioner-Appellant,

v.

W.J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 82–2033.

United States Court of Appeals,
Fifth Circuit.

May 6, 1983.

Rehearing and Rehearing En Banc
Denied July 18, 1983.

Kenneth Schubb, University of Texas School of Law, Austin, Tex., for petitioner-appellant.

Barbara J. Williams, Iris J. Jones, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before BROWN, GEE and JOLLY, Circuit Judges.

GEE, Circuit Judge:

William Johnson, Jr. was convicted of murder with malice aforethought in a Texas state court on January 24, 1973, and sentenced to life imprisonment. On appeal from the federal district court's denial of habeas corpus relief, 28 U.S.C. § 2254 (1976), Johnson contends that (1) there was a fatal variance between the indictment and proof adduced at trial, (2) the introduction of stipulated evidence denied him a fair trial, (3) he was incompetent at the time of trial, (4) he received ineffective assistance of counsel and (5) the district court erred in its adoption of the recommendation and findings of the United States Magistrate. We note at the outset that while the record contains the filings in the proceedings that took place in the trial court, it does not include a statement of facts or a transcript of the trial proceedings.[1] Accordingly, our analysis proceeds under the assumption that the factual allegations set forth in Johnson's brief are a true and correct summarization of those developed at trial. *See*

---

1. Neither party has been able to locate these documents. The record on appeal indicates that the Court Reporter has since retired and cannot be found. Moreover, because Johnson did not perfect an appeal their transcription was not required under Texas law. Tex.Rev. Civ.Stat.Ann. art. 2324 (1971) (Vernon's).

*Pruitt v. Hutto,* 574 F.2d 956, 957–58 (8th Cir.1978). In part we affirm the district court's judgment; however, in provisionally accepting Johnson's factual allegations as true, we believe that there is sufficient evidence to warrant an inquiry on the claim of ineffective assistance of counsel. We therefore reverse and remand for an evidentiary hearing on that claim.

## I. FACTS AND PROCEDURAL HISTORY

While its significance is a matter of controversy, it is undisputed that on November 15, 1972, Johnson shot Carlyn Ann Venters dead in the Harris County, Texas Courthouse. At the time of this incident Venters was on trial for allegedly shooting Johnson; a shooting that resulted in Johnson's being paralyzed from the waist down. Johnson was charged with murder with malice aforethought and the trial court, after finding him to be indigent, appointed legal counsel.

Johnson initially entered a plea of not guilty to the charge of killing Venters. On the advice of counsel this plea was withdrawn and a plea of *nolo contendere* entered. Presumably after a presentation of the evidence a jury convicted Johnson of the charge and the trial court sentenced him to an enhanced term of life imprisonment. On March 19, 1973, Johnson filed notice of appeal to the Texas Court of Criminal Appeals. On the advice of counsel this notice was withdrawn on June 22, 1973.

In consequence, no appeal has ever been perfected.

Between 1975 and 1980 Johnson, *in forma pauperis,* filed four applications for a writ of habeas corpus with the Texas Court of Criminal Appeals.[2] That court denied all four applications without written order. After exhaustion of state remedies Johnson filed a writ of habeas corpus in the United States District Court for the Southern District of Texas on October 15, 1980. The United States Magistrate recommended the petition be dismissed for failure to state a claim upon which federal habeas corpus relief could be granted. The district court adopted the magistrate's recommendation and ordered the petition dismissed. Johnson then filed a notice of appeal to this court and requested that the district court grant a certificate of probable cause. The district court adopted the magistrate's recommendation that the certificate be denied. Because we believed that Johnson's petition raised colorable issues of constitutional violations we granted his application for a certificate of probable cause. *See Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

## II. THE INDICTMENT

Johnson's first contention is that there was a fatal variance between the facts alleged in the indictment and the proof adduced at trial. Specifically, he states that the indictment alleged that, with malice

---

2. In his first application for writ of habeas corpus Johnson alleged that (1) the court directed the jury to reach a guilty verdict, (2) the court instructed the jury that Petitioner had confessed his guilt, (3) the court failed to instruct the jury that Petitioner's two prior convictions were for misdemeanors and (4) counsel was ineffective.

   The grounds alleged in the second application for writ of habeas corpus were (1) ineffective assistance of counsel, (2) denial of due process (court told jury to find the Petitioner guilty), (3) the sentence given was void for failure to show both the minimum and maximum time to be served and (4) the application for probation was prejudicial and denied Petitioner a fair trial in that it requested the Petitioner's race.

   In the third application for writ of habeas corpus, Johnson, represented by attorney Will

Gray, alleged that he had ineffective assistance of counsel during material and critical stages of the proceedings against him.

   The allegations contained in his fourth application for writ of habeas corpus were that (1) the indictment incorrectly identified the murder victim constituting a fatal variance in the indictment and proof adduced at trial, (2) introduction of stipulated evidence denied Petitioner a fair and impartial trial, (3) Petitioner was incompetent to stand trial and (4) Petitioner was denied effective assistance of counsel.

   As stated above, all four applications for writ of habeas corpus made in the state court were denied by the Texas Court of Criminal Appeals. The present case encompasses those allegations contained in Johnson's fourth application.

aforethought, he murdered "Carol Ann Venters" when the proof at trial showed that the victim was really named "Carlyn Ann Venters." We believe this argument to be without merit.

When a defendant pleads *nolo contendere* he waives all non-jurisdictional defects in the proceedings against him. *Williamson v. Alabama,* 441 F.2d 549 (5th Cir.1971); *Williams v. Wainwright,* 604 F.2d 404 (5th Cir.1979). The misspelling of a victim's name in an indictment charging murder is unquestionably a non-jurisdictional defect. In consequence, Johnson's plea of *nolo contendere* is a functional bar to this argument's success. Moreover, because Johnson did not object to this alleged defect at trial and because he has neither alleged nor shown that his defense was prejudiced we are not obliged to consider this argument in a habeas proceeding. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). However, because we remand this case to the district court for an evidentiary hearing on Johnson's claim of ineffective assistance of counsel, we do not rest our decision on the above points. For even if we assume the existence of a variance, Johnson has failed to show, by a preponderance of the evidence, that such a variance was fatal. *Murphy v. Beto,* 416 F.2d 98, 100 (5th Cir.1969).

In a federal court, habeas corpus can be invoked with respect to indictments only where they are "so fatally defective" that under no circumstances could a valid conviction result from facts provable under the indictment. *Johnson v. Beto,* 383 F.2d 197, 198 (5th Cir.1968). Such a determination can be made only by looking to the law of the state where the indictment was issued. Under Texas law a defendant bears the burden of proving a defective indictment. Johnson has failed in his burden, by not showing that (1) "Carol" is not a contraction, derivation, abbreviation, or corrup-

tion of "Carlyn," *Evans v. State,* 509 S.W.2d 371 (Tex.Cr.App.1974); (2) Venters was not known by both names, *Murphy v. State,* 424 S.W.2d 231 (Tex.Cr.App.1968); or (3) the two names are not *idem sonans,*[3] *Martin v. State,* 541 S.W.2d 605 (Tex.Cr.App.1976). Most importantly Johnson in no manner demonstrated that the alleged variance prejudiced his defense. *Forder v. State,* 456 S.W.2d 378 (Tex.Cr.App.1970). He knew whom he killed.

## III. THE STIPULATED EVIDENCE

Johnson's second contention is that the introduction of stipulated erroneous evidence denied him a fair and impartial trial. Here he charges that the cause number of a previous conviction, which was used for enhancement, was incorrect.

The documentary of the trial proceedings reveals that a stipulation of evidence was entered into the record at the sentencing portion of Johnson's trial in cause number 186,603. In this stipulation Johnson admitted that he was the same person who was convicted of the offense of aggravated assault on January 22, 1969, and also of the offense of seriously threatening life on December 11, 1967. This stipulation is signed by both Johnson and his attorney. No objection to the allegedly incorrect cause number appears in the record; nor does Johnson allege that his counsel objected to its entry. Since Johnson pleaded *nolo contendere* to the substantive offense, signed the stipulation in open court while accompanied by counsel, and waited until his fourth state writ of habeas corpus, seven years after his conviction, to raise this issue, we could find that Johnson waived this non-jurisdictional defect in the proceedings against him. *See Williams v. Wainwright,* 604 F.2d 404 (5th Cir.1979). Because of the ultimate disposition of this case, however, we decline to do so.

**3.** The rule of *idem sonans* means that names are the same that have the same sound or sound the same. Under Texas law a court of appeals "will ... refrain from disturbing on appeal a jury or trial court determination that names in question are *idem sonans* unless evi-

dence shows that the names are patently incapable of being sounded the same or that the accused was misled to his prejudice." *Martin v. State,* 541 S.W.2d 605, 607 (Tex.Cr.App. 1976).

■■ Even assuming that Johnson did not waive this claim, and further assuming that the stipulation of evidence did contain an error, we remain to be convinced that Johnson has carried his burden of showing that such an error violated his constitutional rights. In the usual case involving the admission of prejudicial evidence, habeas corpus relief will be granted only if the error was "material in the sense of a crucial, critical, highly significant factor." *Hills v. Henderson,* 529 F.2d 397, 401 (5th Cir.1976), *quoting Corpus v. Beto,* 469 F.2d 953 (5th Cir.1972); *Bryson v. Alabama,* 634 F.2d 862 (5th Cir.1981). On the totality of circumstances we cannot say that an incorrect cause number prejudiced Johnson's defense.

## IV. EVIDENTIARY HEARINGS

Johnson next contends that the district court erred in not granting an evidentiary hearing on his claims of incompetency to stand trial and ineffective assistance of counsel.[4] We address these issues sequentially.

### A. Incompetency

■ The gravamen of this argument is that recent paraplegia, two subsequent suicide attempts, an irrational homicide, a history of mental illness and the taking of Valium, as well as another unnamed drug, compels an evidentiary hearing to determine whether Johnson was competent at the time of trial. We do not agree. The constitutional standard of competency to stand trial, applicable to the states by virtue of the Fourteenth Amendment's guarantee of due process, was enunciated by the Supreme Court in *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960):

> [T]he test must be whether he [the petitioner] has sufficient present ability to consult with his lawyer with reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him. *Id.* at 403, 80 S.Ct. at 789.

Under this standard the sole consideration is whether a habeas petitioner had the

---

4. 28 U.S.C. § 2254(d) addresses the issue of when a habeas petitioner should be permitted a hearing:

   > In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—
   > (1) that the merits of the factual dispute were not resolved in the State court hearing;
   > (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
   > (3) that the material facts were not adequately developed at the State court hearing;
   > (4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceedings;
   > (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceedings;
   > (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
   > (7) that the applicant was otherwise denied due process of law in the State court proceedings;
   > (8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:
   > And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

present mental ability meaningfully to participate in his defense. Thus our analysis must go beyond the bald assertions of fact presented by a petitioner to whether those assertions raise a "real, substantial and legitimate doubt" of the petitioner's competency at the time of trial. *Pride v. Estelle,* 649 F.2d 324, 326 (5th Cir.1981); *Lee v. Alabama,* 386 F.2d 97 (5th Cir.1967); *Bruce v. Estelle,* 483 F.2d 1031 (5th Cir.1973); *Martin v. Estelle,* 546 F.2d 177 (5th Cir. 1977); *Zapata v. Estelle,* 588 F.2d 1017 (5th Cir.1979).

▪ There are two paths a habeas petitioner may travel in raising the issue that he was incapable of meaningfully participating in his defense. One is that the evidence before the trial court presented a "bona fide doubt" as to his competency and therefore the court was required to hold a competency hearing before proceeding with trial. *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Alternatively, a habeas petitioner may collaterally attack his conviction by showing that at the time of trial he was incompetent in fact. *Zapata, supra.* In adopting the magistrate's recommendations, the district court determined that Johnson's petition contained only this latter claim and consequently did not reach the issue of whether the trial court should have held a *Pate* hearing. While we believe that Johnson's allegations do not support either remedy, his petition, however inartfully, does command a determination of whether the trial court should have conducted a *Pate* hearing. Accordingly, we address both claims.

▪ The burden imposed upon a habeas petitioner to demonstrate incompetency in fact at the time of trial is extremely heavy:

> Courts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the Petitioner to meaningfully participate and cooperate with counsel during a criminal trial . . .

> [T]he standard which should be met to sustain such a claim [is] a history of mental illness, substantial evidence of mental incompetence at or near the time of trial supported by the opinion of qualified physicians and the testimony of laymen. The burden is on the Petitioner to prove his allegation; such proof should be clear and convincing. *Bruce v. Estelle,* 483 F.2d 1031, 1043 (5th Cir.1973). *See also McCune v. Estelle,* 534 F.2d 611, 612 (5th Cir.1976).

Against this standard, we are compelled to conclude that Johnson's argument represents no more than mere retrospective assertions of incompetency. He advances no medical opinion establishing or inferring mental illness, no documentation that his claimed suicide attempts were actually designed to take his life, nor any other evidence from which this court may glean that he was incompetent to stand trial.

▪ Even assuming that Johnson was in fact suffering from a mental illness or disability at the time of trial, on the present facts we are unable to conclude that this mental deficiency precluded petitioner's meaningful participation in his defense. *Bolius v. Wainwright,* 597 F.2d 986, 990 (5th Cir.1979). Nor can we hold that the present facts give rise to an inference that the trial court should have conducted a hearing, *sua sponte,* to determine Johnson's competence to stand trial. Generally, "three factors are to be considered in determining whether a *Pate* violation has occurred: any history of irrational behavior, defendant's trial demeanor, and prior medical opinion." *Zapata, supra,* at 1020 n. 1. Because Johnson's allegations do not suggest that the trial judge was aware of any prior medical opinion or that his demeanor at trial would suggest that he was incompetent, we need only consider whether Johnson's pretrial behavior should have alerted the trial judge to the possibility that he was incompetent to stand trial.

Although Johnson contends that he twice attempted suicide, his allegations do not establish that the trial judge either knew of these attempts, or was not justified in dis-

counting their significance. *See Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Nor does a seemingly irrational crime, without more, place a trial court on constructive notice that a defendant is incompetent to stand trial. *See Fitch v. Estelle,* 587 F.2d 773, 777 (5th Cir.1979).

We turn now to Johnson's claim of ineffective assistance of counsel.

### B. Ineffective Assistance of Counsel

It is the essence of legal training that there is no one correct approach to a given problem and that the approach taken must be responsive to both the issues of the case and the audience evaluating the argument. It is therefore extremely difficult, even with the aid of hindsight and reflection, to determine the arguments that would be most influential and persuasive when one is not in immediate proximity to the jury and the unfolding drama of the case. Because as judges we must decide, we have developed the standard that effective counsel is not "errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir.1960), *modified,* 289 F.2d 928 (5th Cir. 1961), *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). The quintessential requirement of this standard is that a defendant be provided with a well reasoned and sound defense. Such a defense is not required to withstand every accusation which may be leveled at it on appeal. It must, however, reveal a clear and concise trial strategy when viewed against the totality of the circumstances and facts surrounding the trial.

Against this background we must evaluate Johnson's argument that his counsel (1) failed to investigate his case properly; (2) failed to request a psychiatric examination to explore the possibility of an insanity defense; (3) misrepresented the effect of a *nolo contendere* plea, thereby rendering his plea involuntary; and (4) persuaded him to withdraw his appeal under the mistaken belief that an appeal would subject Johnson to the death penalty, thereby rendering the waiver of his right to appeal involuntary. Standing alone, it is unlikely that these allegations would be sufficient to carry the present charge, however we noted at the outset that we would accept Johnson's allegations as true. As such we must admit that we are troubled—troubled that, given the gravity of petitioner's claims, he has never received an evidentiary hearing nor been provided any other forum where the veracity of these claims may be tested. Yet even if we were not to accept Johnson's claims as truth we would be compelled to require an evidentiary hearing on the present facts.

In *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the Supreme Court reasoned that an evidentiary hearing is mandatory where a habeas petitioner has not received a state court hearing and: (1) he alleges facts which, if proved, would entitle him to relief and (2) the record reveals a genuine factual dispute as to these alleged facts. *Id.* at 312, 83 S.Ct. at 756. Because we believe that Johnson's claim of ineffective assistance of counsel, if proven true, establishes a clear constitutional violation, our immediate concern is whether the present facts support *Townsend's* second tier.

Johnson asserts that his court appointed attorney neither visited him prior to trial nor questioned him concerning the events leading up to the murder of Venters. He further urges that this investigative lapse resulted in counsel's not presenting the only meritorious defense available—one of insanity.[5] In addition, Johnson alleges that the attorney refused to investigate his case fully unless Johnson paid him a fee of

---

**5.** While we hesitate to second guess the tactics of a trial attorney, the facts indicate that insanity was the only defense remotely capable of success. Whether such a defense was meritorious under the facts as known by counsel is a matter of conjecture. However, it is precisely because we cannot determine whether this defense should have been discarded, in light of the plea of *nolo contendere,* that petitioner's allegation is troubling. *See Martin v. Texas,* 694 F.2d 423 (5th Cir.1982).

600 dollars and advised him not to perfect an appeal because it could result in his receiving the death penalty.[6] The State counters these allegations with an affidavit from the attorney professing to have handled petitioner's case in a professional manner. Without impugning counsel's integrity or professionalism we must conclude that in the absence of a record the truth of this issue is indeterminable. Accordingly, we remand this case to the district court for an evidentiary hearing on this claim.[7] We leave it to the district court to trace the exact contours of such a hearing. We note, however, that if the State produces the factual statement or transcript of Johnson's trial proceedings,[8] the district court is not precluded from examining that record and determining that petitioner's factual allegations are met by its contents. *See, infra* n. 7.

## V. CONCLUSION

Johnson's final contention is that the district court failed to make a "de novo determination" in adopting the magistrate's recommendations and findings of fact. *See* 28 U.S.C. § 636(b)(1). Neither the record nor prevailing case law support this assertion.

For the reasons set forth above, we vacate the judgment below and remand the case to the district court for proceedings consistent with this opinion.

### VACATED AND REMANDED.

6. Several months prior to petitioner's conviction the Supreme Court held the Texas death penalty unconstitutional. *Branch v. Texas,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Even though the Texas Legislature enacted a new death penalty statute, one which became effective *before* petitioner dismissed his appeal, this statute did not cover conduct which occurred before June 14, 1973. Tex.Laws 1973, ch. 426, at 1122–23. House Bill 200, which established the death penalty after *Branch,* was passed in conjunction with the new Texas Penal Code. The Penal Code plainly stated that it applied only to conduct occurring after its effective date. Tex.Laws 1973, ch. 399, § 1, at 883. Thus petitioner's conduct occurred at a time covered by neither the old nor the new statute. Moreover, our reading of the new death penalty statute indicates that petitioner's conduct was not within its scope. *Id.*

7. In *Townsend* the Supreme Court reasoned that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

(1) There cannot even be the semblance of a full and fair hearing unless the state court actually reached and decided the issues of fact tendered by the defendant. Thus, if no express findings of fact have been made by the state court, the District Court must initially determine whether the state court has impliedly found material facts. No relevant findings have been made unless the state court decided the constitutional claim tendered by the defendant on the merits. *Id.* 372 U.S. at 313–14, 83 S.Ct. at 757–758.

8. In the district court the State argued that: Rule 9(a) of the rules governing section 2254 cases in the United States district courts provides that a petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition because of *delay in its filing, unless the petitioner shows* that the petition is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred. The Advisory Committee notes state that, if the delay is more than five years after the judgment or conviction, prejudice toward the state is presumed. Respondent submits that the petition should be dismissed for this reason.

Because the State has not raised this argument on appeal, we need not determine whether an evidentiary hearing at this time would prejudice the State's ability to respond to petitioner's charges. *See McDonnell v. Estelle,* 666 F.2d 246, 250 (1982).