IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-20782
_____


JAMES BLAKE COLBURN

                              Petitioner - Appellant

        v.

JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION

                              Respondent - Appellee

_____

Appeal from the United States District Court
for the Southern District of Texas
499-CV-4200
_____
May 9, 2002

Before KING, Chief Judge, and JOLLY and DEMOSS, Circuit Judges.

KING, Chief Judge:[*]

    Petitioner - Appellant James Blake Colburn was convicted and

sentenced to death in Texas state court for the capital murder of

Peggy Murphy.  He now requests a certificate of appealability to

appeal the federal district court's denial of habeas corpus

_____

        [*]  Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

relief under 28 U.S.C. § 2254.  For the following reasons, we DENY Colburn's request for a certificate of appealability.

## I.  Factual and Procedural History

On June 26, 1994, Colburn met Peggy Murphy while walking across a road to visit a friend.  Murphy was hitchhiking on the road, which was near Colburn's apartment.  Colburn invited Murphy up to his apartment for a drink of water.  After unsuccessfully attempting to force Murphy to have sexual intercourse with him, Colburn killed Murphy in his apartment by choking her and stabbing her in the neck with a knife.  Colburn then went to a neighbor's apartment and asked the neighbor to call the police.

Colburn was indicted on August 10, 1995, for the offense of capital murder.[1]  During his trial, the jury heard Colburn describe his encounter with Murphy in a videotaped confession. The jury found Colburn guilty of capital murder.  Pursuant to Article 37.071, Section 2 of the Texas Code of Criminal Procedure, the jury was presented with two special issues at the sentencing phase of Colburn's trial.[2]  On October 10, 1995, the

---

[1]  Colburn's attempted aggravated sexual assault of Murphy elevated her murder to a capital offense.  TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 1994).

[2]  The special issues presented to the jury were as follows:
> (1) Whether there is a probability that the defendant, James Blake Colburn, would commit criminal acts of violence that would constitute a continuing threat to society?
> (2) Whether taking into consideration all of the evidence, including the circumstances of

jury returned an affirmative answer to the first special issue concerning future dangerousness and a negative answer to the second special issue concerning whether mitigating circumstances would warrant a life sentence.  Accordingly, the trial court sentenced Colburn to death by lethal injection, as the jury's findings required under Article 37.071, Section 2(g) of the Texas Code of Criminal Procedure.  TEX. CODE CRIM. PROC. ANN. art. 37.071, § 2(g) (Vernon Supp. 2002).

On direct appeal, the Texas Court of Criminal Appeals affirmed Colburn's conviction and sentence.  Colburn v. State, 966 S.W.2d 511 (Tex. Crim. App. 1998).  Colburn did not file a petition for writ of certiorari to the United States Supreme Court.  On January 17, 1997, Colburn filed a state petition for writ of habeas corpus.  The trial court recommended that the writ be denied, and on December 2, 1998, the Texas Court of Criminal Appeals denied habeas relief to Colburn.  The Court of Criminal Appeals adopted most of the findings of fact and conclusions of law recommended by the trial court but specifically refused to adopt others.

---

> the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

3

One year later, on December 2, 1999, Colburn filed his federal habeas petition in federal district court. The director of the Texas Department of Criminal Justice ("Respondent") filed a motion for summary judgment, and Colburn filed a cross-motion for summary judgment. The district court granted summary judgment in favor of Respondent, denied Colburn habeas relief, and denied Colburn's request for a certificate of appealability ("COA") on all of his claims on May 21, 2001. Colburn timely appealed the district court's denial of habeas relief, seeking a COA from this court on four issues: (1) whether the district court erred when it found Colburn's procedural competency claim to be defaulted and, alternatively, whether the district court erred in denying Colburn relief on the merits of that claim; (2) whether the district court erred in denying Colburn relief on his claim that he was incompetent to stand trial; (3) whether the district court erred in denying Colburn relief on his claim that he received ineffective assistance of counsel due to his attorneys'[3] failure to request a competency hearing prior to trial; and (4) whether the district court erred in denying Colburn relief on his claim that he received ineffective assistance of counsel due to his attorneys' misuse of expert witnesses.

---

[3] Jerald Crow and F.M. "Rick" Stover represented Colburn at trial. We refer to Crow and Stover collectively as "Colburn's attorneys" throughout this opinion.

## II. Standards of Review

We review the district court's grant of summary judgment de novo, applying the same standards as the district court. Fisher v. Texas, 169 F.3d 295, 299 (5th Cir. 1999). Since Colburn filed his federal habeas application in the district court after April 24, 1996, his claims are governed by the standards established in the Anti-Terrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2254 (Supp. 2001). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Green v. Johnson, 116 F.3d 1115, 1119-20 (5th Cir. 1997). Under the AEDPA, before an appeal from a denial of a § 2254 habeas petition can proceed, the petitioner must obtain a COA, which will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (Supp. 2001). "An applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further." Rudd v. Johnson, 256 F.3d 317, 318-19 (5th Cir. 2001).

Moreover, "the determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." Barrientes v. Johnson, 221 F.3d 741, 772 (5th Cir. 2000). Under

5

§ 2254(d), an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also Wheat v. Johnson, 238 F.3d 357, 360 (5th Cir. 2001).  Additionally, a state court's determination of factual issues must be presumed correct, and the habeas petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The presumption of correctness is especially strong where, as here, the trial and the state habeas proceedings occur before the same state judge.  See Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000).

## III.  Issues 1 and 2: Colburn's Competency-Related Claims

In this federal habeas proceeding, Colburn raises two claims related to his competency to stand trial.  First, Colburn asserts that the district court erred in denying Colburn relief on his procedural competency claim.[4]  Second, Colburn asserts that the

---

[4]  This procedural competency claim is often referred to as a Pate claim.  The Supreme Court's opinion in Pate v. Robinson,

6

district court erred in denying Colburn relief on his claim that he was incompetent to stand trial.[5]  We conclude that Colburn fails to make a substantial showing of the denial of a constitutional right with respect to each of these competency-related claims.  Accordingly, we deny his request for a COA on these claims.

A.  Standard of Review

Colburn asserts that the district court erred in reviewing his procedural and substantive competency claims under a deferential rather than a de novo standard.  Citing Bouchillon v. Collins, 907 F.2d 589, 592-94 (5th Cir. 1990), Colburn argues that because he did not receive a "full and fair hearing" on his competency claims in state habeas proceedings, the presumption of correctness that the AEDPA accords to state court findings of fact must be abandoned.  This contention is incorrect.

Colburn requests that this court enforce a standard that is no longer valid.  Bouchillon was decided under pre-AEDPA law, under which the presumption of correctness could be abandoned if the petitioner was denied a "full and fair hearing" in state

_____

383 U.S. 375 (1966), established that a court must sua sponte conduct an inquiry into a defendant's mental capacity if the evidence before the court raises a bona fide doubt as to the defendant's competency to stand trial.  Id. at 385.

[5]  Colburn also asserts that the district court erred in denying Colburn relief on his claim that he received ineffective assistance of counsel due to his attorneys' failure to request a competency hearing prior to trial.  We address this claim below. See infra Part IV(B).

7

court. 907 F.2d at 593 & nn.11-12. Furthermore, when Bouchillon was decided, there was no deferential standard of review for a state court's legal conclusions. The AEDPA abandoned the standards of review used in pre-AEDPA cases like Bouchillon and "put into place a deferential scheme, under which we must defer to a state court adjudication on the merits." Valdez v. Cockrell, 274 F.3d 941, 950 (5th Cir. 2001). The AEDPA "jettisoned all references to a 'full and fair hearing' from the presumption of correctness accorded state court findings of fact" so that "a full and fair hearing is not a prerequisite to the application of 28 U.S.C. § 2254's deferential scheme." Id. at 949, 942.

## B. Colburn's *Pate* Claim

In his first competency-related claim, Colburn alleges that the district court erred in denying Colburn relief on his claim that the trial court committed a Pate violation during Colburn's trial. A trial court commits a Pate violation by failing to conduct sua sponte an inquiry into a defendant's mental capacity to stand trial when the evidence raises a bona fide doubt as to his competency at the time of trial. Pate, 383 U.S. at 385. The test for competence is whether a person has (1) "sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding," and (2) a "rational as well as factual understanding of the proceedings against the

8

person." TEX. CODE CRIM. PROC. ANN. art. 46.02, § 1A(a) (Vernon Supp. 2002); see also Dusky v. United States, 362 U.S. 402, 402 (1960).

The State argues, and the district court found, that Colburn failed to exhaust his Pate claim. We agree. "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999). A review of Colburn's state habeas petition reveals that Colburn did not present the legal or factual basis for a procedural Pate claim to the state court. As the district court correctly recognized, mere citation to Pate for a general legal principle is insufficient to alert the state court to the existence of a procedural competency claim. Colburn fails to persuade us that a COA should issue on this point.

## C. Colburn's Substantive Incompetency Claim

In his second competency-related claim, Colburn asserts that the district court erred in denying Colburn relief on his claim that he was incompetent to stand trial.[6] "[A] habeas petitioner

_____

[6] The district court was "disinclined to find the substantive competency claim unexhausted," and disposed of the claim on the merits, relying on the state court's finding that Colburn was competent to stand trial. Under § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Since we find that Colburn fails to make a substantial showing of the denial of a constitutional right on his substantive competency claim, we do not address exhaustion.

9

may collaterally attack his state conviction by directly alleging incompetence at the time of trial, thereby claiming a violation of the substantive right not to be tried and convicted while incompetent . . . ." Carter v. Johnson, 131 F.3d 452, 459 n.10 (5th Cir. 1997). However, the petitioner's burden to demonstrate incompetency at the time of trial "is extremely heavy." Johnson v. Estelle, 704 F.2d 232, 238 (5th Cir. 1983). This burden requires the petitioner to "present facts sufficient to positively, unequivocally, and clearly generate a real, substantial and legitimate doubt" as to his competency. Id.

Pursuant to § 2254(e)(1), we presume the correctness of the state habeas court's fact finding that:

> Based on the credible affidavits of trial counsel, and [the state judge's] personal recollection, [Colburn] fully understood the nature of the proceedings against him and was able to communicate with and otherwise assist trial counsel in his defense.

In other words, the state habeas court found that Colburn satisfied both requirements for competency: (1) "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding," and (2) a "rational as well as factual understanding of the proceedings against [him]." TEX. CODE CRIM. PROC. ANN. art. 46.02, § 1A(a); see also Dusky, 362 U.S. at 402. The district court concluded that "[t]he evidence of record is insufficient to raise a real and substantial doubt concerning Colburn's competency at the time of his trial." We

10

agree.   Colburn fails to adduce clear and convincing evidence of his incompetency sufficient to overcome the presumption of correctness that attaches to the state habeas court's determination that he was competent at the time of trial.[7]

### i.   The Evidence Supporting Colburn's Competency

Substantial evidence supports the state habeas court's finding that Colburn was competent to stand trial.  At Colburn's request, the state trial court appointed Dr. Walter Quijano to determine Colburn's competency.  Dr. Quijano examined Colburn approximately ten months prior to his trial.  After interviewing Colburn and reviewing his medical history, Dr. Quijano concluded that Colburn "had a factual understanding of the proceedings against him."  Dr. Quijano also reported that Colburn "appeared to have a rational understanding of the proceedings against him" because he "knew the events leading to arrest and related them to the charge, the wrongfulness of the conduct charged, the consequences of a guilty verdict, and the proceedings in court." Furthermore, Quijano concluded that Colburn had "substantial ability to communicate and assist counsel in his own defense" because he "knew his counsel, had sufficient interpersonal rapport with them, could communicate the facts of the case to them, and could and did participate in his defense strategy."

---

[7]   Competency to stand trial is a fact determination entitled to a presumption of correctness.  Miller v. Fenton, 474 U.S. 104, 113 (1985).

11

For these reasons, Quijano opined that the "defendant appeared to be competent to stand trial."[8]

Colburn's attorneys also retained Dr. Carmen Petzold, a specialist in sexual crimes, to conduct a mental evaluation of Colburn. Dr. Petzold examined Colburn three weeks prior to jury selection. Dr. Petzold reported that "[d]espite [Colburn's] chronic mental illness, he does appear to be able to form a logical and rational understanding of the charges against him, he has an adequate understanding of the legal process as it relates to him, he is able to adequately consult with his attorney in order to prepare an adequate defense, and he appears to be therefore, competent to stand trial." The competency evaluations of Drs. Quijano and Petzold provide valuable insight into Colburn's mental state at the time of trial. See Martin v. Estelle, 583 F.2d 1373, 1374 (5th Cir. 1978) ("Medical evidence, such as expert testimony from psychiatrists who have examined the defendant near the time of trial or testimony based upon hospital records reflecting defendant's mental history, generally provide sound material for reconstruction of defendant's mental state.").

Additionally, during state habeas proceedings, Colburn's attorneys opined that Colburn "was able to communicate with us

_____

[8] In an affidavit first submitted to the federal district court in conjunction with Colburn's federal habeas petition, Dr. Quijano contradicted his original evaluation and stated that Colburn was actually incompetent at the time of trial. We discuss this additional evidence below. See infra Part III(C)(ii).

12

throughout our representation" and that Colburn "had excellent recall of the circumstances surrounding [his offense] and was able to relate the facts to us." Because Colburn's relationship with his attorneys is central to the question of his competence to stand trial, his attorneys are in the best position to determine that he was competent. See Medina v. California, 505 U.S. 437, 450 (1992) (stating that "defense counsel will often have the best-informed view of the defendant's ability to participate in his defense"); see also Bryson v. Ward, 187 F.3d 1193, 1201 (10th Cir. 1999) ("Defense counsel is often in the best position to determine whether a defendant's competency is questionable."); Watts v. Singletary, 87 F.3d 1282, 1288 (11th Cir. 1996) (same).

Finally, Dr. David Axelrad, one of Colburn's medical experts, evaluated Colburn shortly before Colburn filed his state habeas petition. In his report, Dr. Axelrad opined that "the evaluation and testimony of Dr. Walter Y. Quijano was sufficient for purposes of arriving at an opinion regarding Mr. James Blake Colburn's competency to stand trial."[9] Furthermore, Dr. Axelrad agreed with Dr. Petzold's competency determination by stating in his report that "the patient provided responses to Dr. Petzold

---

[9] Like Dr. Quijano, Dr. Axelrad has altered his opinion concerning Colburn's competency at the time of trial. This "addendum report" was first presented to the federal district court in conjunction with Colburn's federal habeas petition. We discuss this additional evidence below. See infra Part III(C)(ii).

13

that suggested he was competent to stand trial. The contemporaneous conclusions of Drs. Quijano and Petzold, which were found adequate by Dr. Axelrad, and the opinions of Colburn's attorneys, strongly support the state trial court's finding of Colburn's competency at the time of his trial.

### ii. The Evidence Presented by Colburn to Show Incompetency

Colburn attempts to rebut the state court's finding that he was competent to stand trial with evidence of: (1) his history of mental illness, (2) his demeanor at trial, (3) psychotic episodes occurring during his pretrial incarceration, (4) Dr. Axelrad's "addendum report" and recent affidavit, and (5) a recent affidavit by Dr. Quijano. We find that, viewed as a whole, this evidence does not add up to clear and convincing evidence that the state court's finding of fact - that Colburn was competent to stand trial - is incorrect.

Colburn's evidence of incompetence based on his history of psychiatric illness is unpersuasive. First, Drs. Quijano and Petzold fully considered Colburn's medical history, yet both initially determined that Colburn was nevertheless competent to stand trial. Second, Colburn's attorneys likewise found Colburn to be competent to stand trial. Third, it is clear from the record that Colburn's history of mental illness was factored into the state habeas court's finding that he was competent.

14

In McCoy v. Lynaugh, 874 F.2d 954 (5th Cir. 1989), we confronted facts similar to the facts of this case in reviewing a request for habeas relief.  In McCoy, the state trial court ordered an expert competency evaluation because of defendant McCoy's history of psychiatric problems and suicide attempts and because of his medicated state.  Id. at 960-61.  Because both the appointed expert and McCoy's trial counsel found McCoy to be competent, this court declined to overturn the findings of competence by the state and federal habeas courts.  Id. at 961.  As Dr. Axelrad correctly notes in his report, "the forensic test for competency does not require that the person be free of psychotic illness or psychiatric problems."  See Mata v. Johnson, 210 F.3d 324, 329 n.2 (noting that "the presence or absence of mental illness or brain disorder is not dispositive" of competency).  In Colburn's case, the experts, his attorneys, and the trial court all found Colburn to be competent at the time of trial despite his history of mental illness.

Colburn's assertion that his demeanor at trial establishes his incompetency is also unpersuasive.  The trial record reflects only one instance of Colburn's drowsiness.[10]  However, Colburn

---

[10]  The following exchange occurred as Colburn fell asleep:

| Counsel Crow: | Do any of the drugs that are used to treat paranoid schizophrenics make them sleepy? |
| Dr. Quijano: | Yes. |
| Counsel Crow: | And that sleep would be pronounced if the drug |

15

argues that this was not an isolated incident and that he fell asleep several times during his trial.  We need not determine the number of times Colburn fell asleep during trial because whether Colburn fell asleep once or slept through most of his trial is not dispositive of Colburn's competence.  See Watts, 87 F.3d at 1287 (stating that the fact that the defendant slept through part of his murder trial is insufficient by itself to establish

|  |  |
|---|---|
|  | were taken within the recent past? |
| Dr. Quijano: | Yes.  These antipsychotic medications have a sedating effect.  So agitated people like in jail you would inject them to give them a good night's rest for a day or two. |
| Counsel Crow: | Judge, can I approach the bench a minute, please? |
| The Court: | Yes, Sir. |

(Whereupon the following was had at the bench)

| Counsel Crow: | Judge, I don't know that it matters, but I think I need a break to walk my client around the room a little bit.  He's snoring kind of loud- |
|---|---|
| Counsel Stover: | They apparently injected him last time night (sic) to calm him down and I appreciate it.  But he's sleeping right now. |
| Counsel Crow: | I don't know if it's going to matter too much, but I think it would be better if we had a minute to walk him around to wake him up. |

incompetency).  Rather, to establish incompetency, Colburn must show that his sleepiness rendered him unable to understand the trial proceedings or to assist his attorneys in his defense. Woods v. Johnson, 75 F.3d 1017, 1038 n.33 (5th Cir. 1996). Colburn has presented no evidence that his sleepiness rises to the level of incompetency, and his attorneys' opinions and the state habeas court's findings of fact suggest otherwise.

Colburn's evidence relating to psychotic episodes is likewise insufficient to overcome the state habeas court's finding of Colburn's competency.  Colburn demonstrates that there were gaps in his psychological treatment while he was incarcerated, which Colburn asserts led to "florid psychotic episodes, suicidal ideation, and enuresis during pretrial detention."  First, we note that anecdotal evidence of psychiatric problems is insufficient to overcome the presumption of correctness that attaches to the state habeas court's determination of competency. Carter, 131 F.3d at 461.  Mental illness is not equivalent to incompetency. Mata, 210 F.3d at 329 n.2.  Colburn presents no evidence that his alleged psychotic episodes rendered him incompetent to stand trial.  Second, two months before his trial, Colburn's psychological treatment resumed on August 4, 1995, and remained uninterrupted thereafter. There is no evidence of psychotic episodes after that date.[11]  On

---

[11]  The jail record describes Colburn as complaining of "anxiety and chest wall pain" on September 30, 1995, but there is

17

August 16 and August 21, 1995, Dr. Petzold evaluated Colburn and unequivocally found him competent to stand trial. After Colburn's treatment resumed, Colburn's attorneys also voiced the opinion that Colburn was competent. Thus, the fact that Colburn may have experienced an occasional psychotic episode while incarcerated does not establish his incompetency to stand trial, especially when Dr. Petzold's and Colburn's attorneys' competency evaluations occurred after all such episodes had ceased.

Additionally, Dr. Axelrad's "addendum report" and recent affidavit are insufficient to overcome the state habeas court's finding of Colburn's competency. Dr. Axelrad did not evaluate Colburn before his trial and was not present at the trial. Rather, Dr. Axelrad first evaluated Colburn in January 1997, over a year after the conclusion of the trial, and his resulting report was presented to the state habeas court in conjunction with Colburn's state habeas petition. In that original report, Dr. Axelrad concluded that the competency determinations of Drs. Quijano and Petzold were adequate but did not independently analyze Colburn's competency. After "reviewing additional records," Dr. Axelrad created an addendum report in December 1999, which was first presented to the federal district court in conjunction with Colburn's federal habeas petition. In the addendum report, Dr. Axelrad states that the additional records

_____

no evidence that this complaint was part of a psychotic episode.

18

he reviewed raise "serious questions and concerns regarding [Colburn's] competency to stand trial" at the time of the trial. Dr. Axelrad presented an affidavit to the district court declaring that "[b]ased on my review of information available to the trial court, it is my forensic psychiatric opinion that evidence that Mr. Colburn was actually incompetent during trial is clear and convincing." More specifically, Dr. Axelrad's current opinion is that, although Colburn appeared competent at the time of Dr. Quijano's evaluation, sedating medication administered to Colburn during trial rendered him incompetent.

In Dunn v. Johnson, 162 F.3d 302, 306-07 (5th Cir. 1998), we questioned the persuasiveness of retrospective psychiatric opinions because of "the difficulty of conducting a retrospective evaluation spanning several years." See also Walker v. Gibson, 228 F.3d 1217, 1229-30 (10th Cir. 2000) (noting that "post-conviction affidavits, prepared over seven years after trial, . . . are of little assistance" in determining competency), overruled on other grounds by Neill v. Gibson, 278 F.3d 1044 (10th Cir. 2001). In the instant case, the state court's finding of competency is based on two contemporaneous competency evaluations, the credible opinions of Colburn's attorneys, and the state court's first-hand recollections of Colburn at trial. Dr. Axelrad's retrospective addendum report and affidavit, prepared more than four years after Colburn's

19

conviction, cannot overcome this strong evidence of Colburn's competency.

Like Dr. Axelrad's affidavit, Dr. Quijano's recent affidavit is unpersuasive. Dr. Quijano presented an affidavit to the district court declaring that "it is my forensic psychological opinion that it is not reasonably probable that during trial Mr. Colburn was legally competent to stand trial." In support of this statement, Dr. Quijano cites to the portion of Colburn's medical records indicating that Colburn was injected with the sedating drug Haldol and to the portion of the trial record indicating that Colburn fell asleep during trial.[12] Dr. Quijano's recent affidavit is suspect for two reasons. First, although Dr. Quijano testified at Colburn's trial and had the opportunity to directly observe Colburn's demeanor at trial, Dr. Quijano's recent opinion of incompetency is based only on the trial record and medical records. Dr. Quijano never mentions any personal observations to support his new opinion of Colburn's incompetency. Second, Dr. Quijano's opinion is based only on Colburn's injection with Haldol and the one instance of sleepiness found in the record. Dr. Quijano uses these facts to tentatively speculate that it is "not reasonably probable" that Colburn was competent during his trial. Dr. Quijano's speculative affidavit does not demonstrate incompetency and is

---

[12] See supra note 10 for the text of that portion of the record that indicates Colburn's sleepiness during trial.

insufficient to overcome the state habeas court's finding of Colburn's competency.

In light of the substantial evidence supporting Colburn's competency, we find that Colburn fails to provide the clear and convincing evidence required to overcome the presumption of correctness that attaches to the state habeas court's fact finding that he was competent to stand trial. Accordingly, Colburn fails to make a substantial showing of the denial of a constitutional right with respect to this issue, and we deny his request for a COA.

## IV. Issues 3 and 4: Colburn's Ineffective Assistance of Counsel Claims

In addition to his competency-related claims, Colburn raises two ineffective assistance of counsel claims. First, Colburn asserts the district court erred in denying Colburn relief on his claim that he received ineffective assistance of counsel due to his attorneys' failure to request a competency hearing prior to trial. Second, Colburn argues that the district court erred in denying Colburn relief on his claim that he received ineffective assistance of counsel due to his attorneys' misuse of expert witnesses.[13] We conclude that Colburn fails to make a

_____

[13] Colburn also argues that the district court erred in denying Colburn's request for an evidentiary hearing to resolve factual conflicts surrounding his ineffective assistance claims. We review the district court's denial of an evidentiary hearing for abuse of discretion. McDonald v. Johnson, 139 F.3d 1056, 1059 (5th Cir. 1998). A habeas petitioner is only entitled to a hearing "[w]hen there is a 'factual dispute, [that,] if resolved

substantial showing of the denial of a constitutional right with respect to both of these ineffective assistance of counsel claims. Accordingly, we deny his request for a COA on these claims.

A. Standard of Review

Colburn argues that the district court erred in reviewing his ineffective assistance of counsel claims under a deferential rather than a de novo standard. Colburn asserts that de novo review is proper because the Texas Court of Criminal Appeals ("TCCA") failed to adjudicate his ineffective assistance claims on the merits. See Valdez, 274 F.3d at 946 (stating that the AEDPA's deferential scheme "operates when the state court has adjudicated the petitioner's claim on the merits"). Colburn points to the unconventional facts surrounding the TCCA's denial of relief to support his argument.

After state habeas proceedings, the state court recommended that the TCCA adopt the following conclusion of law:

> Trial counsel rendered effective assistance of counsel. Hernandez v. State, 726 S.W.2d

---

in the petitioner's favor, would entitle [him] to relief.'" Perillo v. Johnson, 79 F.3d 441, 444 (5th Cir. 1996) (quoting Ward v. Whitley, 21 F.3d 1355, 1367 (5th Cir. 1994)). We find that Colburn's case does not present any factual disputes that require development at an evidentiary hearing in order to properly adjudicate the claims. Because the district court had sufficient facts to make an informed decision regarding the merits of Colburn's claims, the court did not abuse its discretion by refusing to grant Colburn's request for an evidentiary hearing. Murphy v. Johnson, 205 F.3d 809, 816-17 (5th Cir. 2000).

53, 57 (Tex. Crim. App. 1986); <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The TCCA denied Colburn relief and adopted most of the trial court's findings of fact and conclusions of law. Without any explanation, however, the TCCA specifically refused to adopt several findings and conclusions, including the conclusion concerning Colburn's effective assistance of counsel. Because of this action, the state habeas record contains no conclusions of law regarding Colburn's ineffective assistance claims and only one finding of fact indirectly related to those claims.[14]

Although the TCCA's denial of relief suggests an adjudication on the merits, that court's refusal to adopt the conclusion of law concerning Colburn's effective assistance of counsel is puzzling. Fortunately, we need not determine whether Colburn's ineffective assistance claims were adjudicated on the merits in state habeas proceedings because we conclude that Colburn fails to make a substantial showing of the denial of a constitutional right with respect these claims under de novo review. <u>See</u> <u>Nobles v. Johnson</u>, 127 F.3d 409, 416 (5th Cir. 1997) (declining to determine whether the state habeas court sufficiently adjudicated the petitioner's claim on the merits because the petitioner's claim fails "even applying the pre-AEDPA <u>de</u> <u>novo</u> standard of review").

---

[14] <u>See</u> <u>infra</u> note 20 for this finding of fact.

23

B.  The Failure to Request a Competency Hearing

In his first ineffective assistance claim, Colburn argues that the district court erred in denying Colburn relief on his claim that he received ineffective assistance of counsel due to his attorneys' failure to request a competency hearing prior to trial.  Colburn contends that his history of mental illness combined with his drowsiness at trial should have alerted his attorneys to his incompetency.  Quoting McCoy, 874 F.2d at 964, the district court found that "'[t]here can be no deficiency in failing to request a competency hearing where there is no evidence of incompetency.'"  We agree.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established the federal constitutional standard for effectiveness of counsel.  To obtain federal habeas relief on grounds of ineffective assistance of counsel, a petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  Id. at 687.  To prove a deficient performance, a petitioner must demonstrate that a counsel's errors were so serious as to "render[] the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).  Although an attorney has a duty to make reasonable investigations on behalf of clients, there is a strong presumption that an attorney's performance is reasonable.  See Strickland, 466 U.S. at 690-91 (stating that "strategic choices made after thorough

24

investigation of the law and facts relevant to plausible options are virtually unchallengable").

At the time of Colburn's trial, abundant evidence pointed to his competency.[15] Two experts, one appointed by the court pursuant to Colburn's request and the other hired by Colburn's attorneys, found no evidence of incompetency. Furthermore, his attorneys' observations convinced them that Colburn "was able to communicate with us throughout our representation" and that Colburn "had excellent recall of the circumstances surrounding [his offense] and was able to relate the facts to us." Colburn's attorneys' affidavits stated that, based on the expert opinions of Drs. Quijano and Petzold as well as their own observations, they "did not request a competency hearing because [they] had no evidence to support such a request." Such action is reasonable and not deficient. McCoy, 874 F.2d at 963-64. Colburn's attorneys had no duty to hire a third expert in the hopes of producing an opinion suggesting that Colburn was incompetent. See Dowthitt v. Johnson, 230 F.3d 733, 748 (5th Cir. 2000) (holding that "trial counsel was not deficient by not canvassing the field to find a more favorable defense expert"). In fact, Colburn's attorneys "had no reason to believe that another psychiatrist might reach a [different] conclusion" where the initial expert evaluations were "consistent with [the attorneys']

---

[15] See discussion supra Part III(C)(i).

25

own perception and observation of [Colburn]." <u>Clark v. Collins</u>, 19 F.3d 959, 964 (5th Cir. 1994).  Thus, Colburn fails to establish that his attorneys were deficient and rendered ineffective assistance by failing to seek a competency hearing.[16] Accordingly, Colburn fails to make a substantial showing of the denial of a constitutional right with respect to this issue, and we deny his request for a COA.

C.  The Use of Expert Witnesses

In his second ineffective assistance claim, Colburn argues that the district court erred in denying Colburn relief on his claim that he received ineffective assistance of counsel due to his attorneys' misuse of expert witnesses.  More specifically, Colburn asserts two distinct claims: (1) that the district court erred when it found that Colburn's attorneys' failure to retain a psychiatrist, rather than a psychologist, to testify at trial did not amount to ineffective assistance; and (2) that the district court erred when it found that Colburn's attorneys' reliance, to the exclusion of other experts, on Dr. Quijano's testimony was not deficient.  In analyzing these claims, we apply the two-pronged <u>Strickland</u> standard.  <u>See</u> <u>supra</u> Part IV(B).

---

[16]  Because Colburn fails to demonstrate that his attorneys were deficient, we need not consider whether he has established actual prejudice.  <u>See</u> <u>Amos v. Scott</u>, 61 F.3d 333, 348 (5th Cir. 1995) (stating that "a court need not address both prongs of the conjunctive <u>Strickland</u> standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test").

26

### i. The Failure to Retain a Psychiatrist

Colburn argues that he received ineffective assistance because his attorneys hired Dr. Petzold, a psychologist, rather than a psychiatrist, as an expert. Colburn explains that his "psychiatric history and the circumstances of the crime demonstrate that a competent counsel would have retained a psychiatrically trained expert who could explain the pharmacological and medical evidence to the jury."[17] We disagree.

Due to the sexual nature of the murder, Colburn's attorneys retained the services of Dr. Petzold, a psychologist specializing in sex crimes. After reviewing Colburn's medical history and interviewing Colburn for two days, Dr. Petzold reported on Colburn's competency to stand trial as well as his sanity at the time of the offense.[18] As previously discussed, Dr. Petzold concluded that Colburn was competent to stand trial. See supra

---

[17] It is important to note that Colburn is not asserting an Ake violation before this court. In Ake v. Oklahoma, 470 U.S. 68 (1985), the Supreme Court held that a criminal defendant has a constitutional right to the assistance of a psychiatrist in certain situations. Id. at 83. The state habeas court denied Colburn relief under Ake and entered a conclusion of law stating that Colburn "received all the expert assistance to which he was entitled." Colburn does not challenge this conclusion.

[18] Under Texas law, insanity "is an affirmative defense to prosecution" if the actor can show by a preponderance of the evidence that "at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." TEX. PENAL CODE ANN. § 8.01(a) (Vernon 1994).

27

Part III(C)(i).  With respect to Colburn's sanity, Dr. Petzold

concluded that Colburn "knew the difference between right and

wrong at the time of the alleged offense, was capable of

conforming his behavior to the law, and would therefore, not meet

the criteria for the insanity defense."  Given these conclusions,

Colburn's attorneys decided not to use Dr. Petzold as a defense

witness at trial.[19]

The hiring of expert witnesses and the presentation of their

testimony is a matter of trial strategy.  Yohey v. Collins, 985

F.2d 222, 228 (5th Cir. 1993).  Where a previous mental health

examination appears to be very thorough, where counsel has no

reason to suspect that another expert might reach a different

conclusion, and where the original expert conclusion comports

with counsel's own perceptions and observations of the defendant,

counsel is not deficient in not seeking another expert.  See

Clark, 19 F.3d at 964.  First, Colburn presents no evidence that

establishes that Dr. Petzold's evaluation was not thorough or

careful.[20]  Second, Colburn's attorneys had no reason to suspect

---

[19]  Instead, Colburn's attorneys relied exclusively on Dr. Quijano's testimony at trial.

[20]  The state habeas court entered a finding of fact stating:
> This Court has reviewed the report prepared prior to trial by Dr. Petzold, and finds that Dr. Petzold conducted a thorough and careful evaluation of Applicant with regard to the possible relevant issues in Applicant's case, including his sanity and future dangerousness.

that another expert might reach a different conclusion regarding either Colburn's sanity or his competency since Drs. Petzold and Quijano agreed that Colburn was both competent to stand trial and sane at the time of the offense.[21]  Third, the opinions of Drs. Petzold and Quijano are consistent with the observations expressed by Colburn's attorneys in their affidavits.  For these reasons, Colburn's attorneys' reliance on psychologists rather than psychiatrists was not deficient and, therefore, did not constitute ineffective assistance.  <u>Clark</u>, 19 F.3d at 964.  Accordingly, Colburn fails to make a substantial showing of the denial of a constitutional right with respect to this issue, and we deny his request for a COA.

### ii.  *The Use of Dr. Quijano*

Colburn asserts that he received ineffective assistance because his attorneys relied, to the exclusion of other experts, on Dr. Quijano's testimony at trial.[22]  Colburn suggests that his attorneys should not have called Dr. Quijano as a witness or, in the alternative, should have called Dr. Petzold to rebut certain

Because we are conducting a de novo review of this issue, however, we decline to defer to this finding of fact.

[21]  This is especially true given Dr. Quijano's extensive psychiatric experience as the former director of psychiatric services for the Texas Department of Corrections.  Colburn's attorneys had no reason to believe that a psychiatrist would reach a different conclusion that Dr. Quijano.

[22]  Colburn's assertion covers his attorneys' reliance on Dr. Quijano during the guilt/innocence phase and the sentencing phase of his trial.

29

parts of Dr. Quijano's testimony.  In support of his argument, Colburn asserts that Dr. Quijano's unrebutted testimony impaired the viability of his insanity defense at trial.  These assertions lack merit.

We begin by noting that "strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengable."  Strickland, 466 U.S. at 690.  The decision to present or not to present certain evidence is a matter of trial strategy, as is the use of expert witnesses. Smith v. Black, 904 F.2d 950, 977 (5th Cir. 1990); Yohey, 985 F.2d at 228.  In their affidavits, Colburn's attorneys stated that they relied on Dr. Quijano's testimony because they "were of the opinion that Dr. Quijano's report provided . . . enough information that [they] could possibly raise a sanity issue for submission to the jury in spite of Dr. Quijano's conclusion that Mr. Colburn was sane at the time of the commission of the offense."  This strategy was reasonable.

During direct examination by Colburn's attorneys, Dr. Quijano suggested that Colburn was responding to a "command hallucination" at the time of his offense and stated that it is "very possible that he did not know" his conduct was wrong.  This testimony supported Colburn's insanity defense.  Furthermore, through Dr. Quijano's testimony, Colburn's attorneys were able to introduce Colburn's extensive history of mental illness.  Dr. Quijano opined that Colburn suffered from chronic, intractable

paranoid schizophrenia that is "difficult to manage and difficult to treat." Thus, calling Dr. Quijano as a defense witness was a reasonable strategy that was beneficial to Colburn.

Colburn also claims that his attorneys should have called Dr. Petzold to rebut certain parts of Dr. Quijano's testimony. Dr. Petzold's report, however, is no more favorable to Colburn's defense than Dr. Quijano's report. While both experts allowed for the possibility that Colburn was insane at the time of the offense, both ultimately concluded that he was sane. Colburn's attorneys reviewed both reports and decided that Dr. Quijano's testimony at trial was more likely to be favorable than Dr. Petzold's. Such a strategic decision, especially when it yielded favorable testimony, is reasonable. We reject Colburn's assertion that his attorneys were unreasonable for not retaining a third expert to supplement or rebut Dr. Quijano's testimony. See Dowthitt, 230 F.3d at 748 (holding that "trial counsel was not deficient by not canvassing the field to find a more favorable defense expert"). Colburn's attorneys' reliance on Dr. Quijano's testimony was not deficient and, therefore, did not constitute ineffective assistance. Accordingly, Colburn fails to make a substantial showing of the denial of a constitutional right with respect to this issue, and we deny his request for a COA.

## V. Conclusion

31

We find that Colburn fails to make a "substantial showing of the denial of a constitutional right" under § 2253(c). Accordingly, we DENY Colburn's request for a certificate of appealability.